Jeffrey L. Kradel, Esq.
jeff@kradeldefense.com
www.kradeldefense.com

**KRADEL DEFENSE PLLC**
YOUR CRIMINAL DEFENSE

February 10, 2025

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

   **Re:** *United States v. Anthony Curcio & Iosif Bondarchuk*, **24 Cr. 312 (RA)**
      **Defendant Curcio Motion to Suppress Physical Evidence and Memorandum**
      **in Support of Suppression**

Dear Judge Abrams:

Attached for the Court's consideration is Anthony Curcio's Motion to Suppress Physical Evidence and Memorandum in Support of Suppression, as well as an Appendix.

              Respectfully submitted,

              Jeffrey L. Kradel
              Attorney at Law
              WSBA #26767

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>ANTHONY CURCIO<br><br>                    Defendant. | No. 24-CR-312<br><br>MOTION TO SUPPRESS PHYSICAL EVIDENCE AND MEMORANDUM IN SUPPORT OF SUPPRESSION<br><br>[CLERK'S ACTION REQUIRED] |

## I. MOTION

Comes now the defendant, Anthony Curcio, through counsel, and moves pursuant to Fed. R. Crim. P. 23 to suppress all evidence gathered on May 23, 2024, pursuant to a search warrant, the issuance of which was not supported by probable cause to believe a crime had been committed nor that evidence of a crime could be found at the place to be searched. The motion is supported by the Memorandum of Fact and Law which follows.

The application for the search warrant, the warrant itself, and an inventory of items seized are attached as Appendix A.

## II. FACTUAL BACKGROUND

On May 23, 2024, agents with the Federal Bureau of Investigation (FBI), in conjunction with other law enforcement agencies, served a search warrant at Anthony

MOTION TO SUPPRESS PHYSICAL
EVIDENCE AND MEMORANDUM IN
SUPPORT OF SUPPRESSION
- 1

KRADEL DEFENSE PLLC
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

Curcio's residence in Redmond, Washington.  The warrant had been issued by Magistrate Michelle Peterson in the Western District of Washington upon an application made by Special Agent Chris Campbell (SA Campbell) of the Major Theft Task Force in New York City.

The indictment in this case was returned on May 20, 2024.  SA Campbell, in his affidavit, incorporated the indictment by reference.  That indictment, and the affidavit, accuse Anthony Curcio and Josef Bonderchuck of engaging in a scheme whereby they sold or attempted to sell sports and other trading cards at inflated prices "by misrepresenting that low-to-mid grade cards had received high-grade ratings from a reputable card authentication company ("Company-1 ").

SA Campbell's affidavit described the sources he relied upon for the factual assertions he makes in the search warrant application:

> The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating witnesses; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

SW Affidavit, p. 2.  Depending upon how they are counted, it appears the agent relied upon five or six different sources in addition to his "training and experience."  The affidavit does not identify any of the sources.  The affidavit does not identify any companies or non-human sources by name.  All the sources, other than SA Campbell, are unidentified.

SA Campbell's vague sourcing of information is repeated throughout the affidavit.  In paragraph 7 he states "Based on information provided to me and other law enforcement

agents by certain victims of the fraudulent trading card scheme, my discussions with other law enforcement agents, my training and experience, and my participation in this investigation, I have learned[.]"   Paragraph 8 sources its factual claims as coming from "purchase records produced to law enforcement pursuant to a grand jury subpoena served upon an online marketplace, my discussions with other law enforcement agents, my training and experience, and my participation in this investigation[.]". Paragraphs 9 and 10 have nearly identical recitations, with paragraph 9 also relying upon "flight records obtained by law enforcement pursuant to a database search" and paragraph 10 "records produced to law enforcement pursuant to grand jury subpoenas served upon phone companies and financial institutions."  Both paragraphs 9 and 10 also source the factual claims to "my discussions with other law enforcement agents, my training and experience, and my participation in this investigation."

III.    LEGAL STANDARD

The Fourth Amendment to the Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; see also Fed.R.Crim.P. 41.  "To establish probable cause to search a residence, two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983).

"[P]robable cause to search a place exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place' and a federal court

must apply a 'totality-of-the-circumstances analysis' in pursuing this inquiry." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

"[W]arrant applications may not rely merely on "conclusory statement[s]." *Gates*, 462 U.S. at 239; see also *United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1991), (conclusory assertions without factual support are insufficient to establish probable cause).

**A. The Affidavit in Support of the Warrant Is Devoid of Any Description of the Basis for the Assertions it Makes or The Sources of Those Assertions.**

In this case the affidavit has no information about the "basis of knowledge" or "veracity" for *any* sources of information. It does not identify by name any human source. It does not identify by name or description any of the non-human sources of information (i.e. "flight records" from "a database search"). It is an affidavit full of conclusory allegations, and devoid of any description of the underlying reliability of the sources of those claims.

In reviewing the affidavit, it is impossible to determine if SA Campbell is relating something from personal knowledge, repeating an online rumour, or parroting the claims of what he has deemed a "reputable card authentication company." He references "certain victims" and "an online marketplace" without any information about who these sources are

and why they are reliable. The same with "flight records" found in "a database." What type of records? What database? Certain victims of what acts? When? How?

The affidavit here provides no specific fraudulent transactions, no victim statements confirming deception, and no authentication findings verifying fraudulent items. Instead, it relies on broad and conclusory assertions, such as:

- "Target Subject-1 engaged in a fraudulent trading card scheme."
- "Victims confronted Target Subject-1 about fraudulent trading cards."
- "It appears that Target Subject-1 used the SUBJECT PREMISES to further the fraudulent trading card scheme."

These statements lack <u>any</u> factual foundation. They are bare conclusory assertions and unsupported conclusions.

When the Supreme Court eschewed reliance on the Aguilar-Spinelli two-pronged analysis of the reliability of an informant – requiring a "basis of knowledge" and "reliability inquiry - in favor of a "totality of the circumstances" review, it did not abandon the analytical framework of the two-prongs. Instead, the Court observed "they should be understood simply as closely intertwined issues that may usefully illuminate the common sense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place." *Gates* at 230.

The affidavit in this case provided the magistrate with no information from which an analysis of the "totality of the circumstances" could be evaluated. Those "circumstances" must include, at a minimum, identification of the specific source of information – not several possibilities from which to choose. If a factual assertion is based on SA Campbell's personal observation the magistrate could reasonably rely upon that assertion from a law enforcement

MOTION TO SUPPRESS PHYSICAL
EVIDENCE AND MEMORANDUM IN
SUPPORT OF SUPPRESSION
- 5

**KRADEL DEFENSE PLLC**
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

officer.  If it came from someone engaged in ongoing civil litigation with Mr. Curcio, the reliance would need to be tempered by the possibility of ulterior motives.  If the "database" from which "flight records" were taken is one relied upon by law enforcement that draws from reliable sources that is far different from a set of "flight records" promulgated by a Redditt user who has created a "database" full of data provided by other users.

There is no more straightforward notion of a "commonsense inquiry" than finding out the source of information being provided.  Not every source is reliable.  Not every source actually has a "basis of knowledge" for what they claim.  The affidavit in this case provides no way for the issuing magistrate to evaluate the totality of the circumstances – because those relevant circumstances are not disclosed.

The affidavit does not support a finding of probable cause to believe a crime was committed nor that evidence of a crime could be found inside the residence to be searched.

### B. The Conclusory Claims are also Stale.

The affidavit in this case does not establish probable cause for a crime – it lacks any information about the basis of knowledge of the affiant and fails to identify what source of information is relied upon for any conclusory allegation.  But a warrant also lacks probable cause where the evidence supporting it is not sufficiently close in time to the issuance of the warrant that probable cause can be said to exist as of the time of the search.   "In determining whether probable cause exists, the magistrate is required to assess whether the information adduced in the application appears to be current, *i.e.,* true at the time of the application, or whether instead it has become stale." *Rivera v. United States,* 928 F.2d 592, 602 (2d Cir.1991). The claims in the affidavit were stale by May 23, 2024.

The law recognizes "no bright-line rule for staleness," *Walczyk v. Rio,* 496 F.3d 139, 162 (2d Cir.2007), which must instead be evaluated "on the basis of the facts of each case," *United States v. Martino,* 664 F.2d 860, 867 (2d Cir.1981). Two factors in determining staleness are the age of the facts alleged and the "nature of the conduct alleged to have violated the law." *United States v. Ortiz,* 143 F.3d 728, 732 (2d Cir.1998) (internal quotation marks omitted).

The nature of the conduct described here is that two individuals sold trading cards whose value was inflated by misleading purchasers about how the card had been graded "by a reputable card authentication company."  The last acts described in the affidavit having any connection to the residence to be searched are the sale of a Pokemon card to undercover law enforcement officers in July of 2023 and the ordering of a drill bit in May 2024.

There is no information in the affidavit regarding what the drill bit has to do with inflating card values, nor any description of conduct that would have involved such tools. The transaction with law enforcement and the Pokemon cards again does not describe any facts supporting criminality – and no connection to the "Subject premises."  Moreover, that transaction took place almost a year prior to the application.

The affidavit provided no claim of recent criminal activity connected to the place to be searched.  While it certainly described fresh and recent information connecting Anthony Curcio to the residence, it does not provide any recent criminal activity by Curcio nor connected to the residence.  This part of the examination of probable cause cannot be divorced from the fundamental problem with the affidavit – it is full of claims and conclusions, and devoid of facts to support those conclusions.

### III. Conclusion.

The search warrant for Mr. Curcio's residence was issued in the absence of probable cause to believe a crime had been committed or that evidence of that crime could be found at that residence in May of 2024.

I certify that this memorandum contains 2023 words in compliance with local criminal rules.

Dated this 10th day of February, 2025.

Respectfully submitted,

s/Jeffrey L. Kradel
WSBA No. 26767
1455 NW Leary Way, Suite 400
Seattle WA 98107
206/397-3102 voice
206/922-5547 facsimile
jeff@kradeldefense.com

## CERTIFICATE OF SERVICE

I hereby certify that on FEBRUARY 10, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

AUSA Kingdar Prussein and AUSA David Felton

U.S. Attorney's Office for Southern District of New York

/s Jeffrey Kradel