# APPENDIX B

# Defendant's Motion for *Franks* Hearing

# *United States v. Curcio*, 24-CR-312

FD-1057 (Rev. 5-8-10)

**UNCLASSIFIED**

# FEDERAL BUREAU OF INVESTIGATION
### Electronic Communication

**Title:** (U) Jeff Johnson served with lawsuit by        **Date:** 11/29/2023
Anthony Curcio

**From:**  NEW YORK
         NY-C15
         **Contact:**  Christopher J. Campbell, 718-286-7100

**Approved By:**  SSA VEH BEZDIKIAN

**Drafted By:**  Christopher J. Campbell

**Case ID #:** 87N-NY-3740727        (U) OPERATION HEIST AND HOLDER; Anthony
                                     Curcio, Joe Bondarchuk, Jason Donley; PSA
                                     - Victim; ITSP

**Synopsis:**  (U) Jeff Johnson served with lawsuit by Anthony Curcio

**Enclosure(s):** Enclosed are the following items:
1.  (U) copy of lawsuit

**Details:**

   On 11/25/2023, Jeff Johnson telephonically contacted SA Campbell to
advise that he received the attached paperwork via a process server.
Johnson provided a copy of said paperwork via FedEx, which arrived to SA
Campbell on 11/28/2023.

   This paperwork appears to be a lawsuit naming the Plantiffs as Anthony
J. Curcio, and Curcio Media, Inc. and the Defendants as Jeffrey Alan
Johnson, Captain Ticket, Inc. and Upland Sports Cards.

◆◆

**UNCLASSIFIED**

ØŠÒÖ
ŒŒĤÄŎÒÔÁĦÁĦĦĶÏÁÚT
SŒÕÁŎUWĦVÝ
ÙWÚŎÜŒÜÁŎUWÜVÁŎŠÒÜS
ÒŒŠÒÖ
ÔŒÜÒÂÄĦĦĦĦĦĦÁÚŒŒ

## SUPERIOR COURT OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| ANTHONY J. CURCIO, AND CURCIO MEDIA, INC., its successors in interest and/or assigns,<br><br>            Plaintiffs,<br><br>       v.<br><br>JEFFERY ALAN JOHNSON, CAPTAIN TICKET, INC., and UPLAND SPORTS CARDS,<br><br>            Defendants. | No.<br><br>**SUMMONS** |

TO THE DEFENDANTS: A lawsuit has been started against you in the above-entitled court by Anthony J. Curcio and Curcio Media, Inc., ("Plaintiffs"). Plaintiffs' claims are stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing and serve a copy upon the undersigned attorney for the Plaintiffs within twenty (20) days (if service is made on you within the State of Washington) or within 60 days (if service is made on you outside the State of Washington) after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what it asks for because you have not

responded. If you serve a notice of appearance on the undersigned, you are entitled to notice before a default judgment may be entered.

You may demand that Plaintiffs file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon Plaintiffs. Within fourteen (14) days after you serve the demand, Plaintiffs must file this lawsuit with the court, or the service upon you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this 24th  day of November, 2023.

**CURCIO MEDIA, INC.**

By: _____

Anthony Curcio

SUMMONS – PAGE 2 OF 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**SUPERIOR COURT OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| ANTHONY J. CURCIO, AND CURCIO MEDIA, INC., its successors in interest and/or assigns, | No. |
| Plaintiffs, | |
| v. | **COMPLAINT FOR BREACH OF CONTRACT, BREACH OF GOOD FAITH AND FAIR DEALING, CONVERSION OF PROPERTY AND DEFAMATION AND LIBEL PER SE.** |
| JEFFERY ALAN JOHNSON, CAPTAIN TICKET, INC., and UPLAND SPORTS CARDS, | |
| Defendants. | |

Comes now Plaintiff Anthony J. Curcio, who claims and alleges as follows on information and belief except as otherwise stated:

## I.  PARTIES

1.1      Plaintiff ANTHONY J. CURCIO is a resident of King County, Washington and has been a resident at all times material hereto.

1.2      Plaintiff CURCIO MEDIA, INC., is a Washington Corporation organized under the laws of the State of Washington, with its principal place of business in King County, Washington.

1.3      Defendant JEFFERY ALAN JOHNSON ("Jeffrey") is an individual and a resident of San Bernadino County, California.

COMPLAINT – PAGE 1 OF 13

1.4     Defendant CAPTAIN TICKET, INC., is a California Corporation organized under the laws of the State of California, with its principal place of business in San Bernadino County, California.

1.5     Defendant UPLAND SPORTS CARDS appears to be a DBA of Captain Ticket, Inc. and/or Jeffrey Alan Johnson, and is not a separate legal entity.

## II.     JURISDICTION AND VENUE

2.1     The Superior Court has original jurisdiction over this cause of action pursuant to RCW 2.08.010.

2.2     Venue is appropriate in King County, Washington pursuant to RCW 4.12.025(1), as the defendants conducted business within King County, Washington.

## III.     FACTS

BASEBALL CARDS TRADED, PURCHASED AND CONSIGNED

### A.  Background facts and Card information

3.1     Plaintiff Anthony J. Curcio ("Anthony") has owned, bought, sold and traded cards originally as a hobby and had a personal collection of cards since 2000. In 2019 he significantly expanded his collection when he acquired a large number of valuable cards as partial compensation when he sold his business entity. He has since bought, traded and sold some of those cards. The sports card industry started booming in 2020, with the value of cards doubling, tripling and many even increasing by 10x their value in a short time. Noticing the extreme jump in value of cards, Anthony began actively selling and trading cards as the president of Curcio Media, Inc. Baseball cards can be graded by third party entities, at which time they are assigned a case and a score, or "grade". Ungraded or "raw" cards are also extremely valuable, and simply mean they have never been graded or put into a case by a third-party grading company. Anthony began regularly selling, trading and purchasing cards at trade shows, local card shops, online auctions, with individual collectors he met in the industry, etc.

3.2     Anthony plead guilty to a non-violent, yet elaborately planned armored car heist,

executed under the influence of drugs in 2008, and was sentenced to six years in federal prison.
Upon his release from prison, he has devoted his life to working with youth in the field of drug
abuse and crime prevention, speaking to students and athletes across the U.S. He has coached his
daughter's basketball teams as well as other local youth teams in the Northwest for multiple
years. He also wrote multiple best-selling children's books, addressing challenging issues and
delivering heartfelt messages to children through his books. He takes pride in his positive impact
on children's lives and has spent countless hours serving the kids in his community, as well as
his own. He has built an upstanding reputation and successful business ventures as a result of his
dedication to giving back.

**B.** **Meeting Jeffrey Johnson at Palm Springs Card Show**

3.3     On or about September 17, 2023, during the normal course of his trading card
dealings, Anthony met Jeffrey Johnson "Jeffrey", as the representative for "Upland Sports
Cards", acting on behalf of "Captain Ticket, Inc." at the Palm Springs Card Show (the "Card
Show"). Jeffrey explained he was the owner of Captain Ticket, Inc. and sold sports cards through
its consignment company called Upland Sports, LLC ("Upland Sports").

3.4     While at the Card Show, Anthony shows Jeffrey a few cards from his Curcio
Media collection, all of which Jeffrey claims to be interested in. Jeffrey examined Anthony's
cards with a 10x jewelers loupe, explaining Upland Card's verification process, while inspecting
Anthony's cards, after which Jeffrey asks Anthony whether he'd consider "consigning with the
Captain." At the Card Show, Anthony and Jeffrey agree to a trade involving several cards and
$6,800.00 was paid to Anthony by Jeffrey as part of the trade agreement reached (the "Trade").
Jeffrey and Anthony share lunch together, are friendly in their conversation and Anthony
discloses his criminal background, as he does with most people he meets and engages in
conversation with. Before leaving the convention, Jeffrey inquired if Anthony owned any other
cards he would be interested in selling and expressed interest in doing business together. Jeffrey
advises Anthony he runs Upland Sports, which is an 'elite' invite-only collectibles auction house

and card shop that would be interested in consigning cards for Anthony. Anthony said he'd consider the idea and get back with him.

3.5     On or September 19, 2023, Jeffrey requested photos of two of Anthony's cards and provided his email to do so. Because the photos weren't sent immediately, the following day Jeffrey states via text "No super rush but "whales" don't grow on trees…" implying that Anthony needed to move faster if he wanted the make the transaction happen.

3.6     Once home, Anthony sent Jeffrey photos of the requested cards and advised Jeffrey they are two of the most expensive in his collection, so he would like to fly down and deliver the cards, if Upland Cards found an interested buyer for them. Immediately Jeffrey states he has an interested buyer. Jeffrey promised huge dollar amounts he would receive from each sale, inducing him to send down the cards quickly. Because of time constraints, and having just returned from California, Anthony decided to send the cards insured and tracked via UPS, rather than flying down with the cards.

## C.  Transaction At Issue

3.7     In addition to the two high value graded cards that Jeffrey was interested in, Anthony sent six ungraded cards and requested that Jeffrey give him an idea of value, assuming they could range in value anywhere from $25-600 per card. Anthony was the rightful owner of the eight cards he sent to Upland Sports Cards for consignment and review.

3.8     Two of the cards were graded by PSA, in cases or "slabs" and provided with PSA registration numbers were:

    a.  Nolan Ryan 1968 TOPPS #177 PSA 9, Registration number 20932587

    b.  Joe Montana 1981 TOPPS #216 PSA 10, Registration number 25039430

Referred to together as (the "Consigned Cards").

3.9     The other six were "raw" or baseball cards had not yet been graded by any grading company. The cards are identified and described as follows:

    a.  1968 TOPPS # 330 Roger Maris, ungraded

    b.   1968 TOPPS # 220 Harmon Killebrew, ungraded

    c.   1968 TOPPS #80 Rod Carew, ungraded

    d.   1968 TOPPS #500 Frank Robinson, ungraded

    e.   1968 TOPPS #100 Bob Gibson, ungraded

    f.   1968 TOPPS #490 Super Stars, ungraded

Referred to together as (the "Raw Cards").

**D.  Agreement Made**

3.10      It was agreed been Anthony and Defendant Jeffrey on behalf of Captain Ticket and Upland Sports Cards that The Consigned Cards would be sent to Defendants to be consigned and sold to a third party for an agreed upon minimum amount of $80,000.00 gross proceeds to Curcio Media, of which Defendant Captain Ticket would retain 25% of the actual sales price for facilitating the sale. If the Consigned Cards were not sold for at least the minimum amount agreed upon, they were to be returned immediately to Anthony.  The Raw Cards would be sent to Defendants to be assessed for value, and then returned to Anthony. (the "Agreement").

3.11      Anthony requested a written contract be put in place asking Jeffrey to send "something simple used before as a BASIC contract for this type of thing" documenting the transaction and terms of their agreement. Jeffrey seemingly agreed, stating "I use my LetterHead Trademarked Email for all deal." On September 25, the day Anthony shipped the cards to Jeffrey, he again requested a contract outlining the terms of the agreement via email. In the email Anthony outlined the terms of their agreement, which was that Jeffrey, on behalf of Captain Ticket, would be responsible for safe keeping of the cards while in his possession and agreed to return the cards if not sold by an upcoming auction. (Exhibit "A")

3.12      UPS delivered the cards on or around September 28, 2023, at which time Jeffrey confirmed receipt of the cards via email, acknowledging and in response to Anthony's written request for the agreed upon terms to be put into a written agreement. A copy of the email confirming receipt of the cards is attached as Exhibit "B".

3.13    Upon receipt and review of the cards, Defendant Jeffrey emailed Anthony confirming that he had negotiated a sale, and that Anthony could expect to receive $71,000.00 from the sale of the Consigned Cards. A copy of the email confirming the expected sale proceeds for the Consigned Cards is attached as Exhibit "C".

3.14    Defendants did not sell the Consigned Cards, or, if they were sold, Defendants did not provide Anthony nor Curcio Media with the agreed upon proceeds from the sale.

3.15    Defendants have refused to return the Consigned Cards and Raw Cards, and contended that some of the cards were counterfeit. Defendants did not identify any specific reasoning for which they had believed some of the cards to be counterfeit, other than knowledge of Anthony's background; nor did Defendants provide any evidence, photos or other documentation supporting this claim.

3.16    On or about October 7, 2023, Defendant Jeffrey advised Anthony that he would be providing the Consigned Cards to a third-party for-profit grading company (PSA). Anthony reminded Jeffrey that he was the owner of the cards, and that unless Defendants intended to purchase the Consigned Cards, that he did not authorize the cards to be provided to this third party, and requested that the Consigned Cards be immediately returned.

**E.  Only Plaintiff was operating under good faith**

3.17    On or about October 4, 2023 Jeffrey mentions that he has a buyer who is interested in another one of Anthony's Graded Card, to which Anthony said he'd like to hold off and didn't want to send another card to Jeffrey. Jeffrey then responds via "Absolutely correct. PSA called today and asked if I had anymore cards…They want to examine all the PSA cards you gave me from that period…", implying the entire statement was an attempt to induce Anthony to provide him another valuable card and not actually act as a consigner to a third party buyer.

3.18    After claiming that the Consigned Cards were provided to a third party, for-profit business, Defendants further claimed that the Raw Cards were destroyed under Jeffrey's belief

they are counterfeit. Anthony informed Defendants they had no right to provide the Consigned Cards to a for-profit third party, nor destroy the Raw Cards, and he expected to be reimbursed for the full value if they were no longer in possession of the cards to return as demanded.

3.19    Once Anthony demanded full reimbursement and/or immediate return of the cards, Defendant Jeffrey changed what he claimed happened to the Consigned Cards, and claimed they were surrendered to police. Despite multiple written requests by Anthony for badge information, case numbers or any identifying information so that he could verify Defendants' claim of surrender, no evidence has been provided by Defendants that the cards were seized by police.

3.20    On or about October 4, 2023, as part of an agreed upon unwinding of the first Trade agreement at the card show, Plaintiffs refunded Captain Ticket for funds Anthony received as a part of the Trade in the amount of $6,800, plus $200 in fees for assessed by Paypal. (Exhibit "D")

3.21    Despite multiple requests by Anthony, Defendants have not returned the Consigned Cards nor the Raw Cards, and he has not been compensated for the Cards.

## IV.  CAUSES OF ACTION

BREACH OF CONTRACT – AGAINST JEFFERY ALAN JOHNSON, CAPTAIN TICKET, INC., AND UPLAND SPORTS CARDS

4.1    Plaintiffs incorporate by reference paragraphs 1.1 though 3.21 and further alleges.

4.2     A valid, binding Agreement exists between Plaintiffs and Captain Ticket, in connection with the Consigned Cards being provided to the care of Jeffrey and Captain Ticket, to be sold to a third party, for which Captain Ticket would retain a percentage of the sale, and if for any reason the cards were unsold, immediately returned to Anthony.

///

///

4.3      Anthony performed his obligations under the Agreement, delivering the Graded Cards and Raw Cards to Defendants, of which receipt and confirmation of value was provided by Defendant Jeffrey;

4.4      Defendants materially breached the Agreement by the conducted alleged herein, including but not limited to, not finding a buyer for the Consigned Cards, as agreed. Defendants further breached the Agreement by not returning the Consigned Cards immediately upon the demand of Anthony.

4.5      Plaintiffs Anthony Curcio and Curcio Media was damaged as a direct result of Defendants' breach of the Agreement.

BREACH OF GOOD FAITH AND FAIR DEALING – AGAINST JEFFERY ALAN JOHNSON, CAPTAIN TICKET, INC., AND UPLAND SPORTS CARDS

4.6      Plaintiffs reallege and incorporate by reference paragraphs 1.1 though 4.5 as set forth herein and further alleges.

4.7      In Washington, every contract contains an implied covenant of good faith and fair dealing, including the agreement made between the parties.

4.8      The Agreement between Plaintiffs and Defendants constitutes a valid and binding contract, which, by operation of law, includes an implied duty of good faith and fair dealing, requiring the parties to cooperate with each other so that each may obtain full benefit of performance.

4.9      The covenant of good faith and fair dealing prohibits a party from doing anything to prevent the other party to the contract from receiving the benefits and entitlements of the contract.

4.10      By and through Defendants acts and omissions alleged herein, Jeffrey, both individual and acting on behalf of Captain Ticket and Upland Sports Cards, intentionally breached the Agreement with Anthony, and in doing so breached the duty of good faith and fair

dealing. Defendant Jeffrey advised Anthony that he was refusing to return the Raw Cards, with his opinion that "you should not be in possession of those cards."

4.11    As a direct and proximate result of the Defendants' breaches of the implied covenant of good faith and fair dealing associated with the Agreement, Plaintiffs Anthony Curcio and Curcio Media, Inc. have experienced substantial damages.

CONVERSION OF PROPERTY – AGAINST JEFFERY ALAN JOHNSON, CAPTAIN TICKET, INC., AND UPLAND SPORTS CARDS

4.12    Plaintiff realleges and incorporates by reference paragraphs 1.1 though 4.11 as set forth herein and further alleges.

4.13    Plaintiffs are the legal owner of the Graded Cards and Raw Cards, herein referred together as ("The Cards").

4.14    As soon as Jeffrey provided the Graded Cards and Raw Cards to a for-profit third party against the specific request of Plaintiff not to do so, Defendants, with knowledge that the personal property was owned by the Plaintiff, took and unlawfully converted it to their own use and benefit.

4.15    Immediately upon Defendant Jeffrey notifying Plaintiff he had unlawfully converted Plaintiff's personal property, Anthony demanded that Jeffrey return the cards or reimburse him for its value.

4.16    Defendants have refused to return the cards to Plaintiffs, have refused to reimburse him for the value of the cards, and have continually refused to do so up to the time of the filing of this suit.

4.17    Defendant Jeffrey insisted to Anthony that the cards Anthony had sent were "…COUNTERFEIT and now with Law Enforcement via PSA" despite providing no evidence to support that claim and multiple requests for any additional information pertaining to Jeffrey's claims.

4.18    The taking and conversion of Plaintiff's personal property by Defendants was done willfully and maliciously, with no regard to Plaintiffs' rights to the property, causing Plaintiffs to suffer damages in the amount of the fair market value of The Cards, estimated at $141,000.00, plus attorney's fees and costs of suit.

DEFAMATION AND LIBEL PER SE – AGAINST JEFFERY ALAN JOHNSON

4.19    Plaintiff realleges and incorporates by reference paragraphs 1.1 though 4.18 as set forth herein and further alleges.

4.20    Plaintiff Anthony Curcio has spent the past ten years rebuilding not only his reputation, but the community around him, through his books, volunteer work coaching kids, and public speaking engagements directly engaging children and teens. Anthony relies heavily on his rebuilt social connections within the community, and makes a consistent and conscious effort to ensure his prior conviction doesn't define the rest of his life.

4.21    Plaintiff Anthony Curcio has just recently released, through the world's leading public service broadcaster known for their impartial and independent content, a multi-country phased released series podcast beginning September 2023 with weekly releases throughout 2023.

4.22    Plaintiff Anthony is working on creating a docuseries, which is currently in production, which captures what lead to the conviction, as well as the life Anthony has built, including redeeming himself through extraordinary giving of both time and resources since release, and any false and misleading statements would create loss of revenue for not just Plaintiff Anthony, but other third parties involved in production.

4.23    Defendant Jeffrey's communications had been threatening law enforcement actions as well as referencing Anthony's family as forms of intimidation. On or about October 18, 2023, Anthony realized he was not going to get any further in his communications with Defendant Jeffrey in his attempts to be reimbursed for the Cards or have the Cards returned.  As such, he blocked text communications from him.

4.24      On or about October 19, 2023 Defendant Jeffrey retaliated to Anthony blocking him via text, by creating a post to a public Facebook group entitled "Buying and Selling Vintage Cards | Investors and Collectors" with nearly 30,000 members accusing Anthony of "peddling counterfeit Vintage Cards at shows from the MidWest to California" located at https://www.facebook.com/groups/760929360750145/permalink/2632943983548664/. (Exhibit "E"). He later responded to questions related to his original post, in which he refers to Anthony as a "con man" and suggests the other user "YouTube him". (Exhibit "E cont.")

4.25      Selling Counterfeit goods is a crime.

4.26      Jeffrey Johnson's statements are false. Anthony has not sold counterfeit goods and is not a "Con Man".

4.27      Defendant Jeffrey Johnson intentionally attributed criminal acts to Anthony, stating that Anthony sold counterfeit goods and is a "con man," and acted with actual malice.

4.28      A reasonable person, upon reading and hearing these false allegations, would have believed and relied upon Defendant Jeffrey's statements.

4.29      Individuals hearing of Defendant Jeffrey's false allegations did believe and rely upon Defendant's statements.

4.30      Anthony Curcio has been harmed and damaged in his reputation and his business by Defendant's statements.

4.31      Plaintiff is informed and believes and on that basis alleges that Defendant Jeffrey Allan Johnson published false and defamatory statements about Plaintiff Anthony Curcio.

4.32      The false and defamatory statements, by imputing serious and criminal conduct to Plaintiff Anthony, caused damage to his reputation and exposed him to public hatred, contempt, ridicule and financial injury.

4.33      Defendant Jeffrey's statements constituted slander, libel and defamation per se.

4.34      Plaintiff is informed and believes and on that basis alleges that Defendant Jeffrey made these statements with actual malice and reckless disregard for the truth.

4.35      As a result of Defendant Jeffrey's false and defamatory statements, Plaintiff Anthony has suffered damages for which the Defendant is liable.

4.36      Plaintiff Anthony is entitled to punitive damages from Defendant Jeffrey Alan Johnson in order to penalize and deter the Defendant from repeating his conduct.

## V.    **PRAYER FOR RELIEF**

WHEREFORE, having fully alleged its causes of action, Plaintiff prays for the following relief:

5.1      Award Plaintiffs their actual, general and specific, plus compensatory damages against Defendants in an amount to be determined at trial;

5.2      Award Plaintiff Anthony Curcio punitive damages against Defendant Jeffrey Alan Johnson in an amount to be determined at trial;

5.3      Enjoin Defendants from making false, disparaging, or misleading statements about the Plaintiffs;

5.4      Declare Defendant Jeffrey Alan Johnson's statement to be defamatory and false and enjoin Defendant to publicly retract all statements made about Plaintiff Anthony Curcio;

5.5      Ordering Defendants to print a full retraction in the Facebook group in which the known published statements were made, as well as all websites controlled by Defendants' stating that Plaintiff is not selling counterfeit or altered cards;

5.6      Ordering Defendant Jeffrey Alan Johnson personally contact all individuals and businesses to retract all statements made about Plaintiff, his moral character, quality of business transactions, and any other negative statements related to Plaintiff;

5.7      Reimburse Plaintiffs of reasonable attorneys' fees, costs, and expenses;

5.8      Award Plaintiffs pre-judgment and post-judgment interest at the legal rate on the damages, attorney's fees and costs of suit awarded; and,

5.9      Such other and further relief as this Court deems equitable and just.


DATED this 24ᵗʰ day of November, 2023.

**CURCIO MEDIA, INC.**

By: _____
        Anthony Curcio

From: **PNW Sports Cards LLC** <pnwsportsllc@gmail.com>
Date: Mon, Sep 25, 2023 at 10:21 AM
To: Jeff Johnson <Jeff@captainticket.com>


Hey Jeff,

I'm wondering if u had a contract you use that covers basics regarding transaction, mostly than I'm sending to you my 3-4 most valuable cards and that you will be responsible for safe keeping while in possession, etc. Then agreement to return if not sold in upcoming auction?

Let me know, thanks!

EXHIBIT B

PNW Sports Cards LLC <pnwsportsllc@gmail.com>

M Gmail

---

**Agreement**

---

**Jeff Johnson** <jeff@captainticket.com>
To: PNW Sports Cards LLC <pnwsportsllc@gmail.com>

UPDATE:

I received your Box today.

NOLAN RYAN 1968 TOPPS #177 PSA 9 ... Registry number 20932587
JOE MONTANA 1981 TOPPS #216 PSA 10 .... Registry number 25039430

1968 TOPPS # 330 Roger Maris
1968 TOPPS # 220 Harmon Killebrew
1968 TOPPS #80 ... Rod Carew
1968 TOPPS #500 ... Frank Robinson
1968 TOPPS #100 ... Bob Gibson
1968 TOPPS #490 ... Super Stars

The Six (6) cards are Raw and UN-Graded.

Please call me when you receive this email.

Ty Jeff



**Jeffrey A. Johnson** | Founder & CEO
jeff@captainticket.com | Cell: 626.255.2125
**Captain Ticket™**
Office: 800.422.4002 | Fax: 626.331.0799
1623 N Mountain Ave
Upland, CA 91784
CaptainTicket.com



---

**From:** PNW Sports Cards LLC <pnwsportsllc@gmail.com>
**Sent:** Monday, September 25, 2023 10:21 AM
**To:** Jeff Johnson <jeff@captainticket.com>
**Subject:** Agreement

Hey Jeff,

I'm wondering if u had a contract you use that covers basics regarding transaction, mostly than I'm sending to you my 3-4 most valuable cards and that you will be responsible for safe keeping while in possession, etc. Then agreement to return if not sold in upcoming auction?
Let me know, thanks!

EXHIBIT "C"

From: **Jeff Johnson** <jeff@captainticket.com>
Date: Thu, Sep 21, 2023 at 12:04 PM
Subject: Re: Ryan/Montana
To: PNW Sports Cards LLC <pnwsportsllc@gmail.com>

Anthony ...
I have negotiated a price based on them looping the card, the market and the age of the grade.
The Centering will definitely come into play as standards have changed.

I have serious investors looking into the Ryan and a local collector looking into the Elway.
If they Pass I have an Auction planned in the beginning of October with minimum bids for 12 to 15 cards. I would add your two card to the auction as they would not compete with the other cards. That will go out to over 27000 buyers so we will have lots of folks looking to bid.

All monies on cards over $10,000 are Bank Wired to me. Smaller items can be paid by PayPal Goods.

    1. The Ryan ...
I quoted $65000 which is $5000 over the bottom of the Vin-Grid

2. The Elway ...
I quoted $6000 which is the standard going price. He doesn't know much about older grades so the beauty of the card will be the main factor.

LMK what you want me to do. Also, Do you have any other Vintage Cards with you?
I know you have the Jordan, Koufax and Rose I dealt to you. They would go great in the Auction as well as some others you have?

Thx Jeff



**Jeffrey A. Johnson** | Founder & CEO
jeff@captainticket.com | Cell: 626.255.2125
**Captain Ticket™**
Office: 800.422.4002 | Fax: 626.331.0799
1623 N Mountain Ave
Upland, CA 91784
CaptainTicket.com



EXHIBIT E



EXHIBIT "E Cont."



EXHIBIT "D"

3:31

Wallet        **Activity**

Get live package tracking →

🔍 Search by name or email

Automatic Payment                          **-$67.95**

---

**Apple Services**
Oct 8

Automatic Payment                          **-$13.20**

---

**Night on the Town Ticket Service**
Oct 4

Money sent                                 **-$200**

"Fee reimbursement"

---

**Night on the Town Ticket Service**
Oct 4

Money sent                                 **-$6,800**

---

 Home     Finances     Payments     Deals     Wallet

ØŠÒÖ
 GŒGÍ ÁT ŒÜ ÀFFÁÆ FÍ ŒGÁÚT
SŒÕÁŐ U Wŀ VÝ
ÙWÚ ÒÙ Œ Ü Ő U WÜ VÅ ÒŠ ÒÜ S
ÒÉ ŒŠ ÒÖ
Ò ŒÜ Ò ÄÝ Æ Í ŒG Í Ě Í É Í ÁÚ Ò Œ

## SUPERIOR COURT OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| ANTHONY J. CURCIO, AND CURCIO MEDIA, INC., its successors in interest and/or assigns, | |
| Plaintiffs, | No. 23-2-24037-5 SEA |
| v. | **DEFAULT JUDGMENT** |
| JEFFREY ALAN JOHNSON, CAPTAIN TICKET, INC., and UPLAND SPORTS CARDS, | |
| Defendants. | |

## JUDGMENT SUMMARY

Judgment Creditors:    Anthony J. Curcio and Curcio Media, Inc., *pro se*

Judgment Debtors:    Jeffrey Alan Johnson and Captain Ticket, Inc.

Judgment Debtor's Attorney:  None

Principal Judgment Amount:  $123,267.48

Interest Rate after Judgment:   7.5% per year

### Judgment

THIS MATTER, having come on regularly for hearing before the undersigned judge of the above-entitled Court, and the Court having jurisdiction and being fully advised in the premises, now makes the following judgment:

DEDFAULT JUDGMENT –
PAGE 1 OF 3

1.  Hearing. This default judgment had no hearing.

2.  Prior Order. Defendants were declared to be in default and the Court entered an Order of Default on February 6, 2024.

3.  Based on the arguments of the parties, the pleadings and the evidence presented, the Court finds that the judgment amount of $120,212.50 is a sum certain.

4.  Defamation and Libel Per Se claims. The Plaintiffs seek solely non-monetary relief for these claims.

5.  Adjudication. On the Basis of the foregoing, IT IS ORDERED, ADJUDGED AND DECREED:

    a.  Plaintiffs Curcio Media, Inc. and Anthony J. Curcio be and are hereby awarded and shall recover a money judgment against Defendants Jeffrey Alan Johnson and Captain Ticket, Inc. in the amount of $120,212.50

    b.  Plaintiffs Curcio Media, Inc. and Anthony J. Curcio are awarded post judgment interest that shall accrue at a rate of 7.5% per year, as allowed by RCW 4.56.110, until paid in full.

    c.  Plaintiffs Curcio Media, Inc. and Anthony J. Curcio be and are hereby awarded litigation costs in the amount of $3,054.98 pursuant to RCW 4.84.030.

    d.  Defendant Jeffrey Johnson shall retract his statements about Anthony Curcio in the Facebook Group "Buying and Selling Vintage Cards | Investors and Collectors", and tag every participating group member in the original post.

    e.  Defendant Captain Ticket shall publish a retraction on its websites https://www.captainticket.com/ and https://uplandsportscards.com/ in a clear and conspicuous place on the landing page, that the derogatory written and verbal statements made by Jeffrey Johnson regarding Anthony Curcio's sports card dealings with implied or explicit statements indicating that Anthony sold counterfeit

cards, that Anthony's conduct was misleading, deceitful or otherwise intentionally defrauding or hurting others, were said without merit.

DONE EX PARTE this _____ day of _____, 2024.

_____
JUDGE/ COURT COMMISSIONER

Presented by:

**PLAINTIFF**

By: _____
   Anthony J. Curcio

King County Superior Court
Judicial Electronic Signature Page

Case Number:      23-2-24037-5
Case Title:           CURCIO ET ANO VS JOHNSON ET AL

Document Title:   Order

Signed By:           Steve Olsen
Date:                   March 11, 2024

Commissioner: Steve Olsen

This document is signed in accordance with the provisions in GR 30.

Certificate Hash:              4279F49F6B92A7EB5BF4310EEADB02FFFA8D7E23
Certificate effective date:   12/19/2022 11:39:47 AM
Certificate expiry date:      12/19/2027 11:39:47 AM
Certificate Issued by:        C=US, E=kcscefiling@kingcounty.gov, OU=KCDJA,
                              O=KCDJA, CN="Steve Olsen:
                              5Pc2bKkz7RGbWetzFEiL6w=="