UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

ANTHONY CURCIO,

Defendant.

24 Cr. 312 (RA)

**DEFENDANT ANTHONY CURCIO'S OPPOSITION TO**
**THE GOVERNMENT'S MOTIONS IN LIMINE**

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................................... 1

I.  THE COURT SHOULD BAR THE ADMISSION OF EXCERPTS FROM *HEIST AND HIGH* AS DIRECT EVIDENCE OR PURSUANT TO RULE 404(B) ..................... 1

    A.  The Excerpts Are Not Direct Evidence of the Charged Offenses ......................... 2

    B.  The Excerpts Are Not Admissible Under Rule 404(b) ......................................... 5

    C.  The Excerpts Should Not Be Admitted Because They Are Unduly Prejudicial Under Rule 403 ................................................................................... 8

    D.  The Book Should Not Be Admitted Because It Would Confuse the Jury and Unnecessarily Prolong the Trial ................................................................... 10

II. THE COURT SHOULD BAR OPINION TESTIMONY FROM THE PSA WITNESSES AND LIMIT THEIR TESTIMONY TO THEIR CONTEMPORANEOUS PERSONAL KNOWLEDGE (IF ANY) ................................. 12

    A.  The Proffered Testimony of the PSA Witnesses Is Not Lay Opinion Testimony ........................................................................................................... 12

    B.  The PSA Witnesses Should Not Be Permitted to Testify Regarding Matters Outside Their Personal Knowledge ........................................................ 16

III. MR. CURCIO'S REFUNDS TO CUSTOMERS ARE PROBATIVE OF HIS INTENT AND SHOULD BE PERMITTED AT TRIAL .................................................. 17

IV. THE COURT SHOULD ALLOW EVIDENCE OF AND ARGUMENT CONCERNING PSA'S MISCONDUCT AND ACTIONS, INSOFAR AS THEY RELATE TO MR. CURCIO'S STATE OF MIND ........................................................... 19

V.  THE COURT SHOULD ALLOW APPROPRIATE EVIDENCE AND ARGUMENT ABOUT THE GOVERNMENT'S INVESTIGATION ............................ 22

VI. MR. CURCIO SHOULD BE PERMITTED TO INTRODUCE EVIDENCE AND MAKE ARGUMENT ABOUT CERTAIN OF MR. CURCIO'S "GOOD ACTS" .......... 24

VII. MR. CURCIO SHOULD BE PERMITTED TO INTRODUCE EVIDENCE AND MAKE ARGUMENT ABOUT HIS PERSONAL CIRCUMSTANCES ......................... 25

VIII. THE GOVERNMENT'S OTHER SUBMITTED ARGUMENTS ................................. 27

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. City of New York*,
466 F. Supp. 2d 545 (S.D.N.Y. 2006) .................................................................... 15

*Bourjaily v. United States*,
483 U.S. 171 (1987) ................................................................................................ 27

*Corliss v. United States*,
7 F.2d 455 (8th Cir. 1925) ...................................................................................... 17

*Gordon v. United States*,
383 F.2d 936 (D.C. Cir. 1967) ................................................................................. 9

*Freedman Normand Friedland, LLP v. Cyrulnik*,
2024 WL 2306096 (S.D.N.Y. May 20, 2024) ........................................................ 16

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
286 F. Supp. 2d 284 (S.D.N.Y. 2003) ..................................................................... 14

*Michael Kors, LLC v. Hernandez Int'l Inc.*,
2016 WL 6306129 (S.D. Tex. Oct. 27, 2016) ......................................................... 14

*U.B. Vehicle Leasing Inc. v. Atl. Mut. Ins. Co.*,
2004 WL 503729 (S.D.N.Y. Mar. 12, 2004) ........................................................... 13

*United States v. Appiah*,
2020 WL 3469688 (D.D.C. June 25, 2020) ........................................................... 8, 9

*United States v. Blackwell*,
853 F.2d 86 (2d Cir. 1988) ...................................................................................... 26

*United States v. Bowie*,
232 F.3d 923 (D.C. Cir. 2000) ................................................................................... 4

*United States v. Cabrera*,
13 F.4th 140, 150 ..................................................................................................... 15

*United States v. Collorafi*,
876 F.2d 303 (2d Cir. 1989) ..................................................................................... 19

*United States v.* Daly,
842 F.2d 1380 (2d Cir. 1988) ................................................................................... 24

*United States v. Dimassa*,
   117 F.4th 477 (2d Cir. 2024) .......................................................... 20

*United States v. Dinome*,
   86 F.3d 277 (2d Cir. 1996) .......................................................... 20

*United States v. Ferguson*,
   676 F.3d 260 (2d Cir. 2011) .......................................................... 16

*United States v. Figueroa*,
   618 F.2d 934 (2d Cir. 1980) .......................................................... 7

*United States v. Gamory*,
   635 F.3d 480 (11th Cir. 2011) .......................................................... 11

*United States v. Garcia*,
   291 F.3d 127 (2d Cir. 2002) .......................................................... 6

*United States v. Gorman*,
   613 F.3d 711 (7th Cir. 2010) .......................................................... 4

*United States v. Green*,
   617 F.3d 233 (3d Cir. 2010) .......................................................... 5

*United States v. Guang*,
   511 F.3d 110 (2d Cir. 2007) .......................................................... 6

*United States v. Harvey*,
   845 F.2d 760 (8th Cir. 1988) .......................................................... 8

*United States v. Hsu*,
   669 F.3d 112 (2d Cir. 2012) .......................................................... 2, 5

*United States v. Jimenez*,
   513 F.3d 62 (3d Cir. 2008) .......................................................... 18

*United States v. Johnson*,
   27 F.3d 1186 (6th Cir. 1994) .......................................................... 8, 9

*United States v. Jordan*,
   714 F. Supp. 3d 158 (E.D.N.Y. 2024) .......................................................... 10

*United States v. Kaplan*,
   490 F.3d 110 (2d Cir. 2007) .......................................................... 16

*United States v. Krikheli*,
   461 F. App'x 7 (2d Cir. 2012) .......................................................... 16

*United States v. Lange*,
    834 F.3d 58 (2d Cir. 2016) ................................................................. 18

*United States v. Males*,
    459 F.3d 154 (2d Cir. 2006) ............................................................... 18

*United States v. Murray*,
    2023 WL 3309484 (S.D.N.Y. May 8, 2023) ........................................ 2

*United States v. Plancarte-Alvarez*,
    366 F.3d 1058 (9th Cir. 2004) ............................................................ 7

*United States v. Raines*,
    2023 WL 62119806 (S.D.N.Y. Sept. 25, 2023) ................................ 26

*United States v. Rivera*,
    2015 U.S. Dist. LEXIS 49430 (E.D.N.Y. Apr. 15, 2015) ........... 24, 25

*United States v. Sindona*,
    636 F.2d 792 (2d Cir. 1980) ............................................................... 19

*United States v. Stephenson*,
    550 F. Supp. 3d 1246 (M.D. Fla. 2021) ............................................. 11

*United States v. Thomas*,
    581 F. App'x 100 (2d Cir. 2014) .................................................. 18, 19

*United States v. Tubol*,
    191 F.3d 88 (2d Cir. 1999) ................................................................. 7

*United States v. Vargas*,
    2018 WL 6061207 (S.D.N.Y. Nov. 20, 2018) ................................... 26

*United States v. Vertil*,
    566 Fed. App'x. 36 (2d Cir. 2014) .................................................... 13

*United States v. von NotHaus*,
    2014 WL 5817559 (W.D.N.C. Nov. 10, 2014) ................................. 14

*United States v. Wiley*,
    610 F. Supp. 3d 440 (D. Conn. 2022) ............................................... 10

*United States v. Williams*,
    663 F. Supp. 3d 1085 (D. Ariz. 2022) .............................................. 11

*United States v. Yannotti*,
    541 F.3d 112 (2d Cir. 2008) ............................................................... 16

## Rules

Fed. R. Evid. 105 ............................................................................................... 5

Fed. R. Evid. 404(b) ................................................................................. passim

Fed. R. Evid. 602 ..................................................................................... 14, 19

Fed. R. Evid. 701(c) ....................................................................................... 14

Fed. R. Evid. 702 ................................................................................. 15, 17, 18

## Other Authorities

Fed. R. Evid. 404(b) advisory committee's note on proposed rules ............................................ 10

Fed. R. Evid. 701 advisory committee's note to 2000 amendment ............................................... 14

Defendant Anthony Curcio hereby submits this memorandum of law in opposition to the Government's Motion in Limine (the "Government's Motion" or "Gov't's MIL") (ECF No. 64). We respectfully request that the Court enter an order denying the Government's Motion consistent with the arguments offered below.

## ARGUMENT

### I. THE COURT SHOULD BAR THE ADMISSION OF EXCERPTS FROM *HEIST AND HIGH* AS DIRECT EVIDENCE OR PURSUANT TO RULE 404(B)

The Government seeks to introduce excerpts from *Heist and High* (the "Excerpts") (ECF No. 64-1), a book Mr. Curcio published with the assistance of a co-author approximately a dozen years ago. As the title bluntly suggests, the book recounts Mr. Curcio's descent into addiction to prescription painkillers, leading to a life of crime to afford a widening array of drugs and culminating in his sensational and ill-fated armored car robbery in 2008. It also recounts various facets of a trading card fraud perpetrated by Mr. Curcio while in college between 2000 and 2004 that the Government characterizes as "nearly identical" to the one he is presently charged with committing between 2022 and 2024.

The Excerpts do not, as the Government suggests, contain "direct evidence of the charged offenses" and therefore do not exempt them from the general prohibition on propensity evidence. The Excerpts recount a scheme that started and ended decades before the charged offense, was mechanically different than the alleged scheme here, and is, at most, nonessential, far-off atmospheric evidence. Nor do the Excerpts fall within any of the exceptions for otherwise prohibited propensity evidence found in Rule 404(b)(2).

If introduced, the Excerpts would be classic prohibited evidence of prior bad acts suggesting to the jury that, because Mr. Curcio did it before, he must have done it this time too.

That is liable to sway the jury to convict Mr. Curcio of the conduct for which is charged today because, as the Government put it, he perpetrated a "nearly identical" fraud twenty years ago.

The Court should not permit such inherently suspect and highly prejudicial evidence to taint Mr. Curcio's right to a fair trial on the offense for which he is presently charged.

### A. The Excerpts Are Not Direct Evidence of the Charged Offenses

The Excerpts do not contain direct evidence of the card upcoding scheme charged in the Indictment: the events and conduct described in the book started and ended over two decades ago, were of a different type of scheme, and are not essential to the prosecution's narrative of the charged conduct.

Evidence is only direct evidence of the charged offense if it (1) "ar[i]se[s] out of the same transaction or series of transactions as the charged offense," (2) is "inextricably intertwined with the evidence regarding the charged offense," or (3) is necessary "to complete the story of the crime on trial." *United States v. Murray*, 2023 WL 3309484, at *1 (S.D.N.Y. May 8, 2023) (alteration in original) (quoting *United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012)).[1] The events and conduct described in the Excerpts do not meet any of these criteria.

First, the Excerpts describe an alleged scheme that is separate and distinct from that charged in the Indictment. That is, they are not part of the same transaction or series of transactions, and the Government does not seriously suggest otherwise. The Excerpts recount an alleged prior scheme that took place during Mr. Curcio's college years at Washington State University, which ended in 2004. That is nearly two decades before the conduct charged in the Indictment, which allegedly occurred from 2022 to 2024. The Government does not otherwise suggest that Mr. Curcio perpetrated the scheme charged in the Indictment prior to 2022 either, and

---

[1]    Any internal citations and quotation marks have been omitted except where noted.

Mr. Curcio was incarcerated for a period of several years in the intervening time, so there simply cannot be continuity between the scheme described in the memoir and that charged in the Indictment.

Second, the events and conduct described in the Excerpts are not inextricably intertwined with the evidence regarding the charged conduct. There is significant temporal and substantive distance between the events and conduct described in the Excerpts and charged in the Indictment. Temporally, the prior conduct allegedly occurred nearly two decades before the presently alleged crimes, and Mr. Curcio spent four-and-a-half of those intervening years in prison. Substantively, none of that alleged prior conduct involved defrauding customers by tampering with cards' grades. Instead, they relate to Mr. Curcio's alleged operation of his own grading company, insurance fraud, and receipt and sale of counterfeit cards. Thus, the prior alleged conduct could not have possibly formed any part of the scheme in the present case. The Government's narrative can and should focus solely on the recent alleged upcoding of the cards, rather than attempting to weave in highly prejudicial, distinct, and decades-old conduct.

Third, the Excerpts are not necessary to the story of the charges at issue. For example, Mr. Curcio's general interest in and understanding of trading cards are at most atmospheric to the operative question of whether Mr. Curcio conspired to or committed wire fraud by upcoding and attempting to sell cards with false grades between 2022 and 2024. And his purportedly learning how to create counterfeit cards in the early 2000s is not relevant to the alleged upcoding scheme in the present case either. Moreover, the Government could prove Mr. Curcio's eBay ban through a variety of other less prejudicial sources, including a stipulation, documentary evidence, or testimony from an eBay employee, all of which would be far less prejudicial and more reliable than the book—assuming, of course, that the reason for the ban was, in fact, identical conduct,

which the fact of the ban itself does not prove. Similarly, Mr. Curcio's contentious history with and negative feelings about PSA is well documented in contemporaneous correspondence and can be elicited by the Government through witness testimony, including from PSA. The Government also asserts elsewhere in its motion that Mr. Curcio's criticism of PSA is "irrelevant" to the charged conduct and should even be excluded at trial, yet, in seeking admission of the Excerpts, claims that this same history is "important background and context" on Mr. Curcio's "contentious history with and negative feelings about PSA." The Government cannot have it both ways: If Mr. Curcio's dispute with PSA is irrelevant when raised by the defense, it cannot be a necessary piece of the puzzle when used by the Government to introduce highly prejudicial and otherwise inadmissible propensity evidence.[2]

Notably, many circuits have overruled or criticized "complete the story" or "inextricably intertwined" intrinsic evidentiary theories. The Seventh Circuit, for example, has cautioned that such evidence is often a ploy for getting in otherwise impermissible propensity evidence:

> We again reiterate our doubts about the usefulness of the inextricable intertwinement doctrine, and again emphasize that direct evidence need not be admitted under this doctrine. If evidence is not direct evidence of the crime itself, **it is usually propensity evidence simply disguised as inextricable intertwinement evidence, and is therefore improper, at least if not admitted under the constraints of Rule 404(b)**.

*United States v. Gorman*, 613 F.3d 711, 718 (7th Cir. 2010) (emphasis added); *see also United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000) ("[T]reating evidence as inextricably intertwined not only bypasses Rule 404(b) and its attendant notice requirement, but also carries the implicit finding that the evidence is admissible for all purposes notwithstanding its bearing on character, thus eliminating the defense's entitlement, upon request, to a jury instruction. *See* Fed.

---

[2]      For the avoidance of doubt, Mr. Curcio's dispute with PSA is relevant, but it can and should come from sources other than the Excerpts. *See infra* 19–22.

R. Evid. 105.  There is, as well, a danger that finding evidence 'inextricably intertwined' may too easily slip from analysis to mere conclusion.").  *United States v. Green*, 617 F.3d 233, 248 (3d Cir. 2010) (noting "that most circuit courts view evidence as intrinsic if it is 'inextricably intertwined' with the charged offense . . . or if it 'completes the story' of the charged offense," but "the former approach was a definition that elucidates little, and the latter so broad that it renders Rule 404(b) meaningless").

The Excerpts are precisely the type of propensity evidence these courts are concerned about.  In seeking to introduce the book, the Government seeks to introduce evidence that Mr. Curcio allegedly perpetrated a trading card fraud while in college between 2000 and 2004 to prove that he perpetrated what it describes as a "nearly identical" fraud between 2022 and 2024. That is a textbook use of a prior bad act (*i.e.*, Mr. Curcio's purported trading card fraud committed in the early 2000s) to prove that the defendant committed the currently alleged bad act (*i.e.*, Mr. Curcio's purported trading card fraud committed between 2022 and 2024).  The Excerpts should not be allowed to evade Rule 404(b) on the theory that they are "direct evidence" of a crime that was allegedly committed decades later.

In short, the book does not contain direct evidence of the charged offenses and should not be admitted on that basis.

B.     The Excerpts Are Not Admissible Under Rule 404(b)

Rule 404(b)(1) prohibits the Government from introducing evidence of a defendant's crimes, wrongs, or actions to show that on a particular occasion he acted in accordance with such character—*i.e.*, propensity evidence.  "In other words, evidence that a defendant committed crimes beyond those presented to the jury is not admissible to show that the defendant is a bad person who is therefore likely to be guilty of the crimes charged."  *Hsu*, 669 F.3d at 118.  Such evidence must be admitted only for "another purpose" (*e.g.*, to prove motive, knowledge, or intent).  *See*

Fed. R. Evid. 404(b)(2). Even so, the Government "may not invoke Rule 404(b) and proceed to offer, carte blanche, any prior act of the defendant in the same category of crime." *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002).

When offering evidence for non-propensity purposes, like knowledge or intent, the Government must articulate a genuine "similarity or connection" between the past act and the charged crime "that makes the prior act relevant to establishing knowledge of the current act." *Id*. Rule 404(b) evidence is admissible only if it (1) is advanced for a proper purpose; (2) is relevant to the crimes for which the defendant is on trial; and (3) has probative value that is not substantially outweighed by any unfair prejudicial effect. *See United States v. Guang*, 511 F.3d 110, 121 (2d Cir. 2007). The Government has not met this standard.

The Excerpts describe different purported conduct, against different alleged victims, based upon different alleged methods, and accomplished for different purposes. Presently, Mr. Curcio is charged with fraudulently upcoding grades in order to sell cards at inflated prices. The Excerpts, in contrast, describe the receipt and sale of counterfeit cards themselves, committing insurance fraud, and altering the appearance of cards. These differences undercut the Government's reliance on Rule 404(b)'s alterative-use rationale, such as for knowledge, intent, or modus operandi. *See Garcia*, 291 F.3d at 137 ("If the government cannot identify a similarity or some connection between the prior and current acts, then evidence of the prior act is not relevant to show knowledge and intent.").

The Government cannot mush these varied and unrelated acts described in the Excerpts into a single "trading card fraud scheme" to show that they are probative of Mr. Curcio's guilt or innocence with respect to the charged offenses. Mr. Curcio's earlier purchase of cards across the country and establishment of his own grading company, for instance, have no meaningful relation

to his upcoding of cards between 2022 and 2024. Even the regrading of PSA's cards described in the Excerpts is not the same as the alleged scheme here. Mr. Curcio's regrading appears to have been a one-time, isolated act that was not connected to any purported sale or a broader fraudulent scheme. The superficial fact that both the prior conduct and the charged offense involve some form of fraud with respect to collectible cards is insufficient for admission under Rule 404(b). *See United States v. Tubol*, 191 F.3d 88, 96 (2d Cir. 1999) (refusing to allow admission of prior bad act evidence when the prior act and charged act did not "share[] any characteristics" beyond a common word involved in both acts and the fact that the defendant "used [the word] in similar ways").

The deactivation of Mr. Curcio's eBay and PayPal accounts twenty years ago is similarly irrelevant. And even if Mr. Curcio's accounts had been deactivated for similar conduct, admitting that evidence would effectively shift a core factual determination from the jury to faceless corporate actors and dilute the central issue of whether Mr. Curcio committed the charged offenses from 2022 to 2024. Further, the Government has not proffered what precise activity led to the deactivations, thus throwing whether they bear *any* relevance to the conduct currently at issue into question.

These events are not only factually distinct from the conduct at issue but also stale. To be admissible pursuant to Rule 404(b), a prior bad act must not be too remote in time. *See United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir. 1980) (reasoning that trial court is obligated "to assess the probative value of every prior conviction offered in evidence and the remoteness of a conviction, whatever its age, is always pertinent to this assessment"); *see also United States v. Plancarte-Alvarez*, 366 F.3d 1058, 1062 (9th Cir. 2004) ("Evidence of prior bad acts is admissible under Federal Rule of Evidence 404(b) if . . . the prior act is not too remote in time[.]"). The events

and conduct described in the Excerpts occurred nearly twenty years ago and include events that are wholly unrelated to the allegations in this case. The remoteness in time alone undermines the probative value of the evidence and increases its prejudicial impact. *See United States v. Harvey*, 845 F.2d 760, 763 (8th Cir. 1988) (holding it was an error to admit evidence of prior bad act occurring more than ten years before the case).

C.    The Excerpts Should Not Be Admitted Because They Are Unduly Prejudicial Under Rule 403

The Government should not be permitted to introduce the Excerpts for any purpose because of their extraordinary potential for undue prejudice. Specifically, if admitted, the Excerpts are likely to sway the jury to convict Mr. Curcio of the conduct for which he is charged today because, as the Government puts it, he perpetrated a "nearly identical" fraud twenty years ago. That is antithetical to the concept of a fair trial.

The Court may exclude evidence under Rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Courts have recognized the unique and heightened danger of unfair prejudice in admitting prior bad acts similar to the one for which the defendant is on trial:

> When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact. That, of course, is why the prosecution uses such evidence whenever it can. When prior acts evidence is introduced, regardless of the stated purpose, **the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person, a convicted criminal, and that if he "did it before he probably did it again."**

*United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994) (emphasis added); *see also United States v. Appiah*, 2020 WL 3469688, at *35 (D.D.C. June 25, 2020) (explaining that courts are "particularly concerned with the prejudicial effect of admitting [prior bad acts] that are similar or identical to the offenses underlying the charges in the instant case for fear of inviting the jury to

think 'if he did it before he probably did so this time'" (quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967))).

Here, according to the Government, the prior bad acts sought to be admitted through the Excerpts are "nearly identical" to the conduct for which Mr. Curcio is now charged. A jury shown a book by Mr. Curcio that the prosecution paints as a confession that he committed a "nearly identical" crime will default to believing that he is guilty of the instant offense—no matter the intervening decades, his circumstances at the time of that earlier conduct and the authorship of that book, or the distinctions between the conduct discussed in that book and the conduct he is charged with now. A limiting instruction will not adequately mitigate that unfair prejudice either, since the prosecution's presentation of a defendant's confession to a "nearly identical" crime is uniquely impactful on a jury. *See Johnson*, 27 F.3d at 1193; *Appiah*, 2020 WL 3469688, at *35.

At the same time, the book is of marginal unique evidentiary value. In considering whether to admit evidence of prior bad acts, courts balance the likelihood and seriousness of the potential undue prejudice against "the probative value of the evidence in view of the availability of other means of proof." Fed. R. Evid. 404(b) advisory committee's note on proposed rules. The Government has other means of proving intent, motive, and other permissible Rule 404(b) purposes that will not jeopardize Mr. Curcio's right to a fair trial. For example, as explained above, the Government can elicit testimony from its two PSA witnesses about Mr. Curcio's "contentious history with and negative feelings about PSA" and can establish that Mr. Curcio was banned from eBay by stipulation, documentary evidence, or calling an eBay employee as a witness.

Thus, even if the Excerpts served the proper purposes under Rule 404(b), which they do not, they cannot pass the Rule 403 balancing test due to the significant risk of undue prejudice against Mr. Curcio.

D.      The Book Should Not Be Admitted Because It Would Confuse the Jury and Unnecessarily Prolong the Trial

The Excerpts should also be excluded because they will necessitate a trial-within-a-trial about the context of each of the statements and the circumstances under which they were written, which will confuse the jury and prolong the trial.

The book is a self-help book about a dark chapter in Mr. Curcio's life decades before the alleged scheme commenced.  Far from the standard, straightforward admissions that tend to characterize motion practice of this sort, it was co-authored and written about Mr. Curcio in the third person.  Most of the Excerpts purport to represent Mr. Curcio's innermost thoughts, but the Government cannot attribute any specific statement in the book to Mr. Curcio as authorship of any particular section remains ambiguous in light of the fact that there was a co-author.  The Government mischaracterizes the book as an autobiography, but in reality, it was written to produce a dramatic, eye-grabbing true crime narrative that also illustrated the destructive impact of drug use on people's lives.

This situation does not fall under with instances where courts have allowed evidence of so-called "autobiographical" statements.  In the context of rap music, for example, courts have recognized that "although rap music often contains first-person accounts of the speaker's lifestyle and activities—including criminal activities—the lyrics are not always autobiographical statements." *United States v. Wiley*, 610 F. Supp. 3d 440, 446 (D. Conn. 2022).  "[T]he relevance of rap lyrics as trial evidence depends on the existence of a specific factual nexus between the content of rap music and the crimes alleged." *United States v. Jordan*, 714 F. Supp. 3d 158, 164 (E.D.N.Y. 2024).  Where there is no evidence that the defendant "authored the lyrics or that the views and values reflected in the video were, in fact, adopted or shared by [the defendant]," a rap

video is not clearly probative of guilt. *United States v. Gamory*, 635 F.3d 480, 493 (11th Cir. 2011).

So too here. Many of the statements attributed to Mr. Curcio in the Excerpts are not verifiable, and the book is written in the third person, making it impossible to confirm which parts reflect Mr. Curcio's own words or actions. Moreover, the book is a sensationalized work meant to entertain and provoke thought from an audience. At a minimum, Mr. Curcio or his co-author would need to be able to explain how the book was written and the circumstances that distinguish his actions then from those at the time of the instant offense. Admitting such unreliable evidence would, in sum, confuse the jury, unduly prolong the trial, and distract from the central issues.

The book's intriguing and exaggerated stories will likely overshadow the core issues at trial as well, which requires the Court to treat such evidence as having heightened prejudicial effect and lessened probative value. *See United States v. Williams*, 663 F. Supp. 3d 1085, 1136 (D. Ariz. 2022) ("The prejudicial effect of the admission of rap lyrics is heightened, and the probative value is lessened, when they have the potential to become a feature of the trial and overshadow the acts giving rise to the charges."). Courts are wary of evidence that carries "a risk of confusing and/or misleading the jury" and "'presents a great risk of jurors having difficulty separating the issues and according the limited weight to the videos.'" *Id.* (quoting *United States v. Stephenson*, 550 F. Supp. 3d 1246, 1252-53 (M.D. Fla. 2021)). Notably, "the likely curative effect of any limiting instruction will be minimal at best." *Id.* (quoting *Stephenson*, 550 F. Supp. 3d at 1252-53). Here, the thrilling narrative of the book is likely to mislead the jury and cause them to give it undue weight in their deliberations. And once the book becomes a feature of the trial, no limiting instruction will be enough to overcome the undue prejudice to Mr. Curcio.

The weight of all of this would threaten to overwhelm the trial—all for evidence that, as set forth above, is minimally probative and deeply prejudicial.

## II. THE COURT SHOULD BAR OPINION TESTIMONY FROM THE PSA WITNESSES AND LIMIT THEIR TESTIMONY TO THEIR CONTEMPORANEOUS PERSONAL KNOWLEDGE (IF ANY)

The Government seeks to elicit supposed "lay opinion testimony" from two PSA employees ("PSA Witnesses"). But the Government plainly seeks to elicit expert opinion testimony from these witnesses. The PSA Witnesses clearly have specialized knowledge relating to the authentication of trading card holders, labels, and grading, and their anticipated testimony would have them use their specialized knowledge to determine for the jury whether the holders, labels, and grades on Mr. Curcio's cards are authentic. That is squarely expert opinion testimony, requiring compliance with all deadlines and requirements associated with expert witness testimony. Because the Government failed to disclose and qualify the PSA Witnesses as experts, they must be barred from offering opinion testimony. *See* Def.'s Omnibus Motion in Limine (ECF No. 60), at 2–4 (seeking exclusion of expert testimony introduced under the guise of lay testimony).

The Government also purports to seek to elicit non-opinion fact testimony from the PSA Witnesses. Given their anonymization and the unclear scope of their prospective testimony, it is unclear whether and to what extent the PSA Witnesses could satisfy Rule 602 (requiring personal knowledge). In any event, the PSA Witnesses' testimony should be strictly limited to their contemporaneous personal knowledge and observations (if any).

### A. The Proffered Testimony of the PSA Witnesses Is Not Lay Opinion Testimony

A witness that has not been presented and qualified as an expert cannot give opinion testimony based on "specialized knowledge." Fed. R. Evid. 701(c). In delineating between expert and lay testimony, the advisory committee notes explain that "the distinction between lay and

12

expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." Fed. R. Evid. 701 advisory committee's note to 2000 amendment. The PSA Witnesses here would plainly be offering such impermissible expert opinion testimony.

First, the PSA Witnesses clearly possess specialized knowledge and experience regarding the holders, labels, and grading of trading cards. The Government reluctantly concedes as much. *See* Gov't's MIL, at 22 (conceding that the PSA Witnesses "have some specialized knowledge regarding PSA's products"). And the Government's motion, in relevant part, reads like the qualifications section of an expert report, listing these witnesses' specialized knowledge and experience, as well. It explains, for example, that these witnesses: (i) have "extensive familiarity with PSA holders and labels and how they changed over time"; (ii) have experience "working on PSA counterfeit issues since approximately 2012"; (iii) have conducted countless evaluations of trading cards for grading and authentication purposes; and (iv) are specifically trained on PSA grading criteria and processes. *See id.* at 18–19.

Second, the Government's motion makes clear that the prosecution intends to elicit opinion testimony from these witnesses in which they will apply their specialized knowledge to reach conclusions—precisely the function of an expert. *See U.B. Vehicle Leasing Inc. v. Atl. Mut. Ins. Co.*, 2004 WL 503729, at *8 (S.D.N.Y. Mar. 12, 2004) ("The purpose of expert testimony is to 'assist the trier of fact to understand the evidence or to determine a fact in issue.'") (quoting Fed. R. Evid. 702); *see United States v. Vertil*, 566 Fed. App'x. 36, 39 (2d Cir. 2014) (summary order) (explaining that experts apply "specialized knowledge" to help the trier of fact understand the evidence). Specifically, in the case of the first PSA Witness, the witness will draw on, *e.g.*, her "extensive familiarity with PSA holders and labels and how they changed over time" to determine

for the jury whether Mr. Curcio's card holders and labels were or "were not issued by PSA." Gov't's MIL (ECF No. 64), at 18. And in the case of the second PSA Witness, the witness will draw on, *e.g.*, his experience "review[ing] countless cards for grading in his career" to determine for the jury whether a particular card "could receive the grade it purportedly received from PSA." *Id.* at 19. So, for example, these witnesses may identify the existence or absence of security features of a specific holder or label; explain how those features might indicate tampering; and reach a reasoned conclusion as to whether the holder or label was or "w[as] not issued by PSA." *Id.* at 18. Or they may identify "physical defects on the card, like a crease," and conclude that that defect "would preclude the card from being graded a ten by PSA." *Id.* Every step of those processes requires the specialized knowledge and feeds into the reasoned conclusion of an expert witness (specifically, experts in trading card holders, labels, and grading); it does not follow from "reasoning familiar in everyday life." *See United States v. von NotHaus*, 2014 WL 5817559, at *14 (W.D.N.C. Nov. 10, 2014) (Government offered expert in "authentication, grading, counterfeit identification of coins, tokens, and medals."); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 285, 288 (S.D.N.Y. 2003) (accepting expert testimony from quality control manager that luxury goods were counterfeit); *Michael Kors, LLC v. Hernandez Int'l Inc.*, 2016 WL 6306129, at *14 (S.D. Tex. Oct. 27, 2016) (holding undisclosed experts could not give expert opinions that goods, tags and labels were counterfeit).

The Government stresses that at least some subset of the "indicia of authenticity" that the PSA Witnesses will evaluate are observable, implying that if the features can be observed, then testimony about them does not require an expert. But that ignores the PSA Witnesses' role in using their specialized knowledge to assist the jury in identifying and understanding that "observable" evidence—again, the quintessential function of an expert. *See Cabrera,* 13 F.4th

140, 150; *Allen v. City of New York*, 466 F. Supp. 2d 545, 548 (S.D.N.Y. 2006) ("One of the fundamental requirements of Rule 702 is that the proposed testimony assist the trier of fact to understand the evidence").  For example, while a lay person might be able to observe "frosting on the holder" or whether a card's centering is "within a tolerance not to exceed approximately 55/45 percent on the front, and 75/25 percent on the reverse," Gov't's MIL (ECF No. 64), at 18–19, it takes an expert to identify those qualities as relevant and then interpret whether they indicate tampering.  If the Government's alternative "observability" test were correct, a cardiac surgeon opining on the condition of a patient's heart would not be offering expert testimony because the condition of the heart is observable, never mind the years of schooling and practice necessary to identify and make sense of aortic inflammation, atrial enlargement, or heartbeat irregularities.

Mr. Curcio will be gravely prejudiced if the PSA Witnesses are permitted to provide their anticipated opinion testimony too.  These witnesses have not met the requirements of Rule 702 (*e.g.*, by demonstrating that their testimony is based on sufficient facts or data, their testimony is the product of reliable principles and methods, and their opinion reflects a reliable application of the principles and methods to the facts of the case).  *See* Fed. R. Evid. 702.  And because they were never disclosed as experts, Mr. Curcio was not given an opportunity to obtain a rebuttal expert. Taken together, Mr. Curcio could be deprived of both an opportunity to challenge the PSA Witnesses' qualifications as experts and to rebut the substance of their testimony with an expert of his own.

The cases cited by the Government are distinguishable.  For example, in *United States v. Krikheli*, 461 F. App'x 7, 10 (2d Cir. 2012) (summary order), a cooperator was permitted to testify about broadly understood industry jargon.  Such testimony is markedly different than identifying

proprietary security features and assessing them for tampering.[3]  Similarly, the court in *Yanotti*

explicitly limited its holding to situations "where a witness derives his opinion solely from insider

perceptions of a conspiracy of which he was a member."  *United States v. Yannotti*, 541 F.3d 112,

126 (2d Cir. 2008).  That is not the situation here, with the Government seeking to have the PSA

Witnesses opine in the first instance based on their specialized knowledge on the authenticity of

Mr. Curcio's cards' holders, labels, and grades.  The Government's other cases are distinguishable

for similar reasons and should be ignored.

      B.     <u>The PSA Witnesses Should Not Be Permitted to Testify Regarding Matters Outside Their Personal Knowledge</u>

Separately, given their anonymization and the unclear scope of their prospective testimony,

it is unclear to the defense whether and to what extent the PSA Witnesses could satisfy Rule 602.

*See* Fed. R. Evid. 602 (requiring fact witnesses to possess "personal knowledge of the matter").

*United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007) (holding lay testimony improperly admitted

because the government did not establish that it was "rationally based" on the perception of the

witness).  In any event, the PSA Witnesses' testimony should be strictly limited to their

contemporaneous personal knowledge and observations (if any).  *See Freedman Normand*

*Friedland, LLP v. Cyrulnik*, 2024 WL 2306096, at *4 (S.D.N.Y. May 20, 2024) (refusing to allow

lay witness to testify to his "after-the-fact opinions based on an analysis of all of the evidence" and

limiting his testimony to "his contemporaneous personal knowledge or observations").

*          *          *

In short, the Government could and should have disclosed and qualified the PSA Witnesses

as experts in the authentication of trading card holders, labels, and grading.  Its failure to do so

---

[3]      *Ferguson* is similarly unpersuasive.  676 F.3d 260 (2d Cir. 2011).

must fall on the prosecution, not Mr. Curcio. The PSA Witnesses should not be permitted to offer opinion testimony about the authenticity of the holders, labels, or grades, and their testimony should be strictly limited to their contemporaneous personal knowledge and observations (if any).

### III. MR. CURCIO'S REFUNDS TO CUSTOMERS ARE PROBATIVE OF HIS INTENT AND SHOULD BE PERMITTED AT TRIAL

The Government asks this Court to exclude evidence that goes to the heart of one of the most significant and disputed issues in this case: Mr. Curcio's mental state.

The Federal Rules of Evidence do not require a jury to consider intent in an evidentiary vacuum, nor do they permit the Government to surgically excise conduct that complicates its preferred narrative. The charged scheme is not a single misrepresentation frozen in time, but part of what the Government alleges is a course of conduct: A series of transactions involving multiple purchasers over a period of time. Given that posture, the jury is entitled to consider how Mr. Curcio acted across that sequence when customers raised concerns. Evidence that Mr. Curcio refunded purchasers who questioned the provenance of the card, or its grade is not offered as a dispositive fact against the entire claim of fraud or to negate the totality of any alleged loss. Rather, his refunding customers is offered for the more modest (and legally proper) purpose of helping the jury determine what Mr. Curcio *actually* intended at the time of the alleged misrepresentations, and evidence bearing on Mr. Curcio's good faith defense is admissible. After all, the use of a good-faith defense based on refunds to dissatisfied customers is a century-old legal strategy. *See, e.g.*, *Corliss v. United States*, 7 F.2d 455, 456 (8th Cir. 1925) (defendants offered to "refund the purchase price of the stock to any dissatisfied stockholder" and if such "representations were not false and fraudulent within the meaning of the statute, the evidence was insufficient to justify submitting the case to the jury").

The Government relies heavily on the proposition that an intent to repay is not a defense to wire fraud. The defense agrees that a refund is not a complete defense to a wire fraud charge. But the defense's argument is not that refunds excuse fraud as a matter of law; rather, it is that refunds are circumstantial evidence that the jury may consider when evaluating intent and good faith, particularly when the charged conduct is transactional in nature and stretches over a period of time. *United States v. Jimenez*, 513 F.3d 62, 75 (3d Cir. 2008) (explaining that "repayment of the over drafted balances could be considered in determining whether the defendants acted with an intent to defraud or whether they acted in good faith, focusing on the intent of the defendants at the time of the actions alleged to be fraudulent").

For its part, the Government relies on *United States v. Thomas*, 581 F. App'x 100, 102 n.3 (2d Cir. 2014), to suggest that wire fraud does not require a defendant's intent to permanently deprive a victim of their money or property. But this citation is misleading. In full, the Second Circuit stated in *Thomas* that it had "not yet had occasion to decide this issue squarely" and expressly declined to rule on it, as it had not been properly presented. *Id.* Far from supporting the Government's position, *Thomas* stands for the proposition that the question remains unresolved. Indeed, the Second Circuit's deliberate avoidance of a definitive holding renders the case a poor foundation for the Government's proposition. Relatedly, *Males* was decided before *Thomas*; thus, the Second Circuit did not construe *Males* to preclude the kind of evidence Mr. Curcio seeks to offer here. *See United States v. Males*, 459 F.3d 154 (2d Cir. 2006).

*United States v. Lange* is distinguishable as well. 834 F.3d 58, 79 (2d Cir. 2016). This is not a case where the defendant invokes an abstract belief that, in the long run, everything would work out and the alleged victims would "ultimately succeed," as quoted by the Government. *Id.* This is a case where Mr. Curcio wanted to and did rectify customers' dissatisfaction by providing

immediate refunds, which would allow jurors to infer that Mr. Curcio was not intending to defraud those customers.

The only remaining authority that binds this Court is *United States v. Sindona*, and it does not move the needle either. 636 F.2d 792 (2d Cir. 1980). First, *Sindona* was decided before *Thomas*, and the *Thomas* court explained that the issue was unsettled. *Sindona* therefore has little persuasive value. Second, the defendant in *Sindona* sought to introduce evidence of a repayment *years removed* from the transaction at issue. *Id.* at 801–02. That is materially different from the facts of this case because Mr. Curcio offered and paid refunds immediately after the alleged transactions.

Finally, "trial courts should follow a liberal policy in admitting evidence directed towards establishing the defendant's state of mind. No evidence which bears on this issue should be excluded unless it interjects tangential and confusing elements which clearly outweigh its relevance." *United States v. Collorafi*, 876 F.2d 303, 305 (2d Cir. 1989). The refunds are patently relevant and will not confuse the jury. Mr. Curcio therefore respectfully submits that the Government's motion should be denied in this respect.

## IV. THE COURT SHOULD ALLOW EVIDENCE OF AND ARGUMENT CONCERNING PSA'S MISCONDUCT AND ACTIONS, INSOFAR AS THEY RELATE TO MR. CURCIO'S STATE OF MIND

The Government moves to preclude evidence or argument that PSA has engaged in misconduct. It is true that whether the powerful third-party grading entity has engaged in misconduct is not, on its own and in a vacuum, relevant to whether Mr. Curcio committed the fraud crimes charged in the Indictment. However, this seemingly benign request could starve a legitimate and vital component of Mr. Curcio's defense of oxygen if implemented in the blanket fashion that the Government proposes.

To be clear, Mr. Curcio anticipates arguing, based on record evidence and testimony, the following, with respect to at least portions of the period during which the scheme is alleged to have taken place:

1) Certain of Mr. Curcio's actions were not motivated by an effort to defraud card purchasers, but rather part of an attempt to expose PSA's dubious practices in excluding him from the market and exposing customers to an erratic and inconsistent grading system and to otherwise respond to actions taken by PSA.

2) Mr. Curcio's knowledge of PSA's practices, both before the alleged scheme began and his awareness of its actions during the period of the alleged scheme, influenced his actions with respect to the transactions at issue.

Mr. Curcio is charged with fraud-related offenses. To convict Mr. Curcio of either conspiracy to commit wire fraud or the substantive crime of wire fraud, the jury must find that he acted knowingly, willfully, and with specific intent to defraud. *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir. 1996) (wire fraud); *United States v. Dimassa*, 117 F.4th 477, 487 (2d Cir. 2024) (conspiracy to commit wire fraud). Evidence that points to an alternative *mens rea*, including taking actions with respect to and in response to those of PSA, is therefore necessarily probative of an actual element of the offense.

Mr. Curcio anticipates that the record at trial will demonstrate not merely that Mr. Curcio had complaints with respect to how PSA did business, but that his actions during the purported fraud period were directly influenced by PSA's actions over the same timeline. While some of those actions were, in retrospect, ill-advised and ill-fated, they were not motivated by an effort to defraud customers. Mr. Curcio must be able to explain them, and that cannot be done without admitting evidence of his true motive and evidence of what he was responding to.

The Government argues that evidence or argument that PSA should have acted in one fashion, or another is irrelevant and inadmissible. *See* Gov't's MIL, at 31-34. There is, however, a difference between these arguments, concerning what PSA should have been doing, and Mr.

Curcio's argument that his actions were a response to what PSA was doing (as opposed to an effort to defraud customers). We do not intend to argue policy, nor do we intend to stage a trial-within-a-trial to advocate for Mr. Curcio's position in what the evidence will show was an ongoing conflict between him and the grading company. But it would be error to preclude Mr. Curcio from demonstrating that prosecuting that conflict was the actual purpose behind some of the actions he took, a position that goes to one of the core elements of the offense for which he is charged.

Oddly enough, the Government elsewhere asks for portions of Mr. Curcio's book to be admitted in order to, among other things, establish his knowledge of and attitudes toward the grading industry, its players, and the role of grading companies like PSA within the collectible card market. The Government cannot seek the admission of the book for its purposes and, simultaneously, seek to excise from the record PSA's actions during the actual fraud period and Mr. Curcio's reactions to them.

Relatedly, the Government contends within this same cluster of arguments that, "even if PSA erred in rating certain cards or Curcio genuinely believed as much, that did not give Curcio a license to unilaterally alter PSA's ratings," and therefore that any evidence to that end should be precluded. This is, perhaps counterintuitively, incorrect. The Government conflates what it sees as generally impermissible with what actually proves the offense that they themselves have charged. The Indictment is dispositive here. Mr. Curcio and his co-defendant are specifically charged with having engaged in a fraudulent scheme "to defraud buyers and marketplaces to purchase sports and Pokémon trading cards at false and inflated prices… *thereby causing victims to pay more money for the cards than they otherwise would have.*" Indictment (ECF No. 3) ¶ 1. Put differently, as the Indictment does in its recitation of the statutory allegations, Mr. Curcio is alleged to have made false statements regarding grading assignments specifically "*in order to*

*induce victims to pay more money for sports and Pokémon trading cards than they otherwise would have paid*." *Id.* ¶¶ 14, 16. In order words, proof of a scheme to alter ratings or grades without proof of a specific intent to cause buyers to pay more is not sufficient proof of the scheme alleged. And the Government's assertion that Mr. Curcio acted badly when and if he presented grades that he thought were appropriate, and its assertion that Mr. Curcio acted badly when he corrected errors by PSA in rating certain cards, does not—by a long shot—resolve the *mens rea* question in its favor. Evidence of such potential error by PSA or good faith by Mr. Curcio is thus highly relevant and should be admitted.

## V. THE COURT SHOULD ALLOW APPROPRIATE EVIDENCE AND ARGUMENT ABOUT THE GOVERNMENT'S INVESTIGATION

Ordinarily, it is axiomatic, as the Government suggests, that the Government's choice of investigative techniques is not on trial, and thus not fodder for argument to the jury. The ancient jury instruction on this very topic is well worn for a reason. We agree that the Government's charging decisions should not be used in a pro-nullification posture and have no interest in drawing up baseless conspiracies between the FBI, PSA, and other parties, which would have no bearing on Mr. Curcio's innocence or guilt.

However, what appears to be a benign prosecution motion based on black-letter law can get tricky in its execution, particularly given the facts of this case. The Court should not allow concerns regarding the Government's investigation to disappear facts that are relevant to what Mr. Curcio is alleged to have done and his mental state at the time. Specifically, we understand the following to be true, and anticipate the trial record demonstrating as much:

1) The FBI and PSA coordinated actions at multiple stages during the period of the scheme set forth by the Government, including PSA's communications with Mr. Curcio regarding specific cards he sought to sell.

2) During that period, PSA acted in ways that were objectively unusual and which caught Mr. Curcio's attention.

3) Mr. Curcio learned, during the fraud period, that the FBI was investigating his involvement in trading card transactions and likely understood that the FBI had involved itself with PSA's actions and communications.

The Indictment alleges a scheme to defraud that covers a period of approximately two years. Mr. Curcio has the right to contest the allegations covering the entirety of that time period, which means that evidence that goes to his knowledge, intent, and overall state of mind are relevant during that entire period. This includes the middle and end of the scheme, during which Mr. Curcio would have been reacting to an unusual pattern of behavior by PSA (in part because PSA was being directed by the FBI in furtherance of its investigation) and during which Mr. Curcio was informed by others that the FBI was looking into him. All of this goes to his state of mind when relevant events in the alleged scheme were taking place.

To omit this information would be akin to the omission of a government-orchestrated sting operation where an individual has been accused of robbery, where the circumstances surrounding the sting were largely the product of the law enforcement's machinations, and where it can be demonstrated that the individual knew about the sting. This is particularly true given that, as set forth above, Mr. Curcio intends to prove that many of his actions, rather than stemming from an intent to defraud customers, were a response and attempt to expose PSA's behavior. The way in which the Government inserted itself into both (1) PSA's actions and (2) Mr. Curcio's awareness during the period of time alleged in the Indictment means that it cannot be wholly or neatly excised from the record.

Furthermore, we understand that the Government intends to introduce items recovered from a judicially authorized search at Mr. Curcio's home as evidence of the alleged fraud. We do not contest the relevance of this part of the Government's investigation, but we respectfully submit that the defense ought to be able to fully engage on this subject as well.

There is, of course, a significant difference between the purposes for which the Government's investigation legitimately is admissible and those uses of the Government's investigation for which the Government seeks a ruling. We don't seek to urge nullification because employees of the FBI did their jobs. We do not seek to spotlight the FBI's failure to do anything with the DNA samples it took of certain items removed from Mr. Curcio's home and invite the jury to speculate as to why. We simply ask that the Court's ruling leave alone those legitimate areas of inquiry and argument, as set forth above.

## VI.  MR. CURCIO SHOULD BE PERMITTED TO INTRODUCE EVIDENCE AND MAKE ARGUMENT ABOUT CERTAIN OF MR. CURCIO'S "GOOD ACTS"

The Government's motion to preclude Mr. Curcio from introducing evidence and making argument about his other, uncharged card sales and transactions should be denied because it is based on a mischaracterization of such evidence as "prior good acts" and such evidence will not confuse the jury.

Mr. Curcio's other, uncharged card transactions are not offered as "prior good acts" aimed at, *e.g.*, establishing innocence by negative example or proving Mr. Curcio's good character. Rather, the defense may point to those other transactions to show the broader scope of his trading card business and the legitimate transactions that coexisted with the charged conduct. In *United States v. Daly*, the Second Circuit recognized that "[b]ackground evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." 842 F.2d 1380, 1388 (2d Cir. 1988). Here, such evidence is essential to avoid misleading the jury by presenting only a partial, selective view of Mr. Curcio's business.

The authority relied on by the Government is inapposite. In *United States v. Rivera*, for example, the defendants were charged with racketeering, narcotic distribution, and violent crimes.

24

*See* 2015 U.S. Dist. LEXIS 49430, at *1-2 (E.D.N.Y. Apr. 15, 2015). The court excluded evidence of *unrelated* prior good acts, such as charitable acts and cooperation with law enforcement, to avoid confusing the jury. *Id.* at *8. Here, in contrast, Mr. Curcio's other, uncharged card transactions are directly relevant to his trading card business and necessary to prevent the jury from being misled by the Government's one-sided portrayal of his entire business as fraudulent. Far from confusing the jury, this evidence will clarify the nature of his business and help the jury distinguish between the allegedly fraudulent sales and the legitimate ones. The Government concedes that not all of Mr. Curcio's transactions are alleged to be fraudulent, yet it seeks to exclude evidence that would help the jury understand the full scope of his business and the legitimate conduct in parallel with the alleged misconduct.

In sum, the Government's blanket request for exclusion of all evidence regarding Mr. Curcio other, uncharged card transactions is unwarranted. The Court should deny this aspect of the Government's Motion and allow the defense to introduce such evidence as, *e.g.*, background on Mr. Curcio's trading card business and to provide context around the charged conduct.

## VII.  MR. CURCIO SHOULD BE PERMITTED TO INTRODUCE EVIDENCE AND MAKE ARGUMENT ABOUT HIS PERSONAL CIRCUMSTANCES

Mr. Curcio should not be barred from raising, on a limited basis, his personal circumstances, like his family background, good works, and history of drug addiction. Mr. Curcio's personal circumstances may be important background information for the jury to consider going to, *e.g.*, his intent, motive, or knowledge—particularly if the Government is allowed to introduce Mr. Curcio's purported prior bad acts through his book. *See supra* at 4. It may also be necessary to contextualize Mr. Curcio's relationship to, and to examine, the Government's Cooperating Witness.

As a threshold matter, the Government's requested "blanket prohibition . . . is premature, since it is conceivable that certain information about [Mr. Curcio's] background may satisfy the standard of Rules 401 and 403." *United States v. Raines*, 2023 WL 6211980, at *6 (S.D.N.Y. Sept. 25, 2023) ("den[ying] the Government's request for all evidence concerning [defendant's] background or personal characteristics"). Moreover, to the extent the Government seeks to introduce evidence of Mr. Curcio's prior bad acts and the circumstances surrounding them, or to otherwise portray him in a negative light, the Court should not "bar Defendant from presenting character witnesses or testimony about his personal circumstances to the extent they rebut facts brought into issue in the Government's case in chief." *United States v. Vargas*, 2018 WL 6061207, at *3 (S.D.N.Y. Nov. 20, 2018).

Should Mr. Curcio decide to testify, evidence concerning his personal circumstances may also be admissible as general background to support his credibility and to rebut the Government's portrayal of him as a habitual fraudster. As the Second Circuit explained in *United States v. Blackwell*, a "trial court is entitled to wide discretion concerning the admissibility of background evidence. Although [background evidence] may be of relatively low probative value, it is nevertheless something that the trier of the fact has a right to know in gauging the credibility of a witness." 853 F.2d 86, 88 (2d Cir. 1988). Furthermore, the defense may need to introduce certain aspects of Mr. Curcio's personal circumstances to effectively cross-examine the Government's Cooperating Witness with respect to his relationship with Mr. Curcio.

The Court should, in sum, allow Mr. Curcio to introduce evidence and make argument about his personal circumstances to provide relevant background; counter the Government's portrayal of Mr. Curcio; effectively cross-examine the Government's Cooperating Witness; and, if necessary, support Mr. Curcio's credibility as a witness.

## VIII.  THE GOVERNMENT'S OTHER SUBMITTED ARGUMENTS

The defense does not object to the admission of the co-conspirator's statements at this time, provided that the Government can meet the evidentiary standards under *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

The defense does not oppose the Government's request to preclude evidence related to the purported victims' lack of due diligence and Mr. Curcio's potential punishments.

The defense does not contest the Government's request that its witnesses not be subject to cross-examination regarding any criminal activity that (i) is more than 10 years old and either did not result in a conviction or did result in a conviction the probative value of which does not substantially outweigh any prejudicial effect; (ii) is less than 10 years old and did not result in a conviction; (iii) is less than 10 years old, resulted in a misdemeanor conviction, or does not constitute a *crimen falsi*—a conviction involving dishonest of false statements; or (iv) is uncharged criminal conduct that has no bearing on the witnesses propensity for truthfulness.

The defense reserves its right to raise additional objections with respect to any of the above submissions at trial.

### CONCLUSION

For the foregoing reasons, Mr. Curcio respectfully requests that the Court:

    i.    not admit any Excerpts from the book *Heist and High*;

    ii.    not admit any opinion testimony from the PSA Witnesses and limiting their testimony to their contemporaneous personal knowledge (if any);

    iii.    allow evidence of and argument about Mr. Curcio's refunds to customers;

    iv.    allow evidence of and argument about PSA's conduct and actions, insofar as they relate to Mr. Curcio's state of mind,

    v.    allow evidence of and argument about the Government's investigation;

    vi.    allow evidence of and argument about certain of Mr. Curcio's "good acts"; and

vii.    allow evidence of and argument about Mr. Curcio's personal circumstances.


Dated: New York, New York
          December 18, 2025                          Respectfully submitted,

                                                                **Simpson Thacher & Bartlett LLP**

                                                                By: */s/ Martin S. Bell*
                                                                Martin S. Bell
                                                                Meredith Karp
                                                                Patrick K. Barry
                                                                425 Lexington Avenue
                                                                New York, New York 10017
                                                                (212) 455-2000
                                                                martin.bell@stblaw.com
                                                                meredith.karp@stblaw.com
                                                                patrick.barry@stblaw.com

                                                                *Attorneys for Defendant Anthony Curcio*

## Certificate of Service

I hereby certify that I caused the filing of the foregoing through the Court's CM/ECF system which will provide notice of filing to all counsel of record.

By: */s/ Martin S. Bell*
Martin S. Bell