# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

TELEPHONE: +1-212-455-2000
FACSIMILE: +1-212-455-2502

| Direct Dial Number | E-mail Address |
|---|---|
| +1-212-455-2542 | martin.bell@stblaw.com |

January 11, 2026

<u>BY ECF & EMAIL</u>

           Re:    *United States v. Anthony Curcio*, 24 Cr. 312 (RA)

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Dear Judge Abrams:

    We represent Anthony Curcio in the above-captioned matter, trial of which will commence on January 12, 2026. We write to follow-up regarding the implementation of the Court's *in limine* ruling regarding those instances in which Mr. Curcio offered or gave refunds to discontented purchasers of his cards.

    We understand the Court to have ruled that evidence of those refunds is not admissible as proof that Mr. Curcio acted without intent to defraud. We intend to follow the Court's ruling. At the same time, and as set forth below, we believe that the actual fact of the refund is impossible to excise neatly from the story of the alleged fraud. The account of what took place during the relevant time period alleged is really the story of what happened with a number of individual cards, most of which were referenced in the Indictment. The individual events in the sequence involving each of these cards, and Mr. Curcio's interactions with them, are inextricably tied together. The best way to implement the Court's ruling, rather than to excise the refunds altogether, is with an appropriate limiting instruction.

    For example: There are cards that Mr. Curcio sold on *both* sides of a refund, before and after, and without the refund, the fact that Mr. Curcio sold them twice naturally makes absolutely no sense. The Indictment itself references such cards:

> "[W]hen victims demanded refunds and confronted…the defendants[] over the fraudulent cards…[they] feigned ignorance and often refunded the victims. Yet, after being put on notice that the cards' grades and labels were fraudulent, [defendants] repeatedly attempted to, and did, sell these very same cards to subsequent victims, again with fraudulent labels showing an inflated grade from Company-1."

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams
-2-
January 11, 2026

Indictment ¶ 6.

  To artificially excise the refund from this pattern would lead to juror confusion, not least because it would be unclear to jurors how the defendants came to possess the card a second time after a sale so as to sell it anew. The Indictment suggests that the Government intends to argue that the reselling of the cards after the demand for a refund is evidence of Mr. Curcio's bad faith. We believe that the Government has every right to put in those facts and make that argument, but it cannot be done without the fact of the refund included.

  It is also the case that the fact refund is sometimes necessary to explain Mr. Curcio's subsequent conduct. The 1986 Fleer Michael Jordan card mentioned in Paragraph 5 of the Indictment is a direct example. We believe the evidence will show that, as a result of the request for a refund and Mr. Curcio's decision to grant one, his financial condition changed drastically and his disdain for PSA grew. Each of these things contributed to his decision to, with relative speed, send a new clutch of cards in for reholdering shortly thereafter, cards that PSA would ultimately flag and delay in returning. Without the refund cancellation, this part of the story, too, is potentially misleading at worst and confusing at best.

  Relatedly, Mr. Curcio is nonetheless entitled to elicit that testimony once the Government inevitably "opens the door" through its own presentation of the facts.[1] For example, the Government may introduce testimony about a specific Michael Jordan card with a wrinkle (or crease) in the bottom left-hand corner and a purported sale to Brian Rzewnicki. The Government also intends to call Daniel Bliss, and Mr. Curcio expects that Mr. Bliss will testify about the same card. Mr. Bliss's testimony will not make sense to the jury unless the Government elicits testimony from Brian Rzewnicki about a refund.[2] Simply stated, Mr. Curcio is entitled to emphasize or contradict testimony elicited by the Government, including any misleading impression left by witnesses' testimony about refunds. *United States v. Payton*, 159 F.3d 49, 58 (2d Cir. 1998) (holding that defendant's testimony on direct that he "had nothing to hide," opened the door to cross-examination about narcotics found in wife's

---

[1] Courts frequently conflate curative admissibility and "opening the door" while ignoring specific contradiction. *See* Francis A. Gilligan & Edward J. Imwinkelried, *Bringing the 'Opening the Door' Theory to A Close: The Tendency to Overlook the Specific Contradiction Doctrine in Evidence Law*, 41 Santa Clara L. Rev. 807, 821–23 (2001). They are separate doctrines; however, we are aware of cases that refer to them interchangeably. *See, e.g., United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992) ("The concept of 'opening the door,' or 'curative admissibility,' gives the trial court discretion to permit a party to introduce otherwise inadmissible evidence on an issue. . .when the opposing party has introduced inadmissible evidence on the same issue, and (b) when it is needed to rebut a false impression that may have resulted from the opposing party's evidence."); *see also United States v. Forrester*, 60 F.3d 52, 60-61 (2d Cir. 1995) (referring to the "opening the door" principle as "curative admissibility").

[2] We expect that the Government will try and attribute Mr. Bondarchuk's interactions with Brian Rzewnicki to Mr. Curcio.

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams

-3-                                                              January 11, 2026

possession just before police entered). While parties' presentation of evidence is fixed by substantive law, the scope of cross-examination is necessarily broadened as the Government develops its case-in-chief and opens new avenues for contradiction. That is, what may be inadmissible at the outset of trial under Federal Rules of Evidence 401 and 402 may well be admissible at some point during the course of trial as the Government elicits certain testimony. *United States v. Gambino*, 951 F.2d 498, 503 (2d Cir. 1991) (holding that Defendant's testimony claiming to have no drug connections and never knowing or doing business with anyone in the Mafia "opened the door" to cross-examination designed to show the contrary); *see also* Fed. R. Evid. 611(a). Based on those principles, and fundamental fairness, Mr. Curcio respectfully requests that the Court permit questioning about refunds once the Government discusses the same on direct.

Courts can, of course, keep even otherwise inadmissible facts in the case presentation where, as here, they are inextricably intertwined with the overall story of the case. *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988) (internal citation omitted). "[T]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment." *Id.* Further, district courts have "wide discretion concerning the admissibility of background evidence." *United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988); *see United States v. Pedroza*, 750 F.2d 187, 200 (2d Cir. 1984) (background evidence admissible to show circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed). The Court may admit refund testimony and provide a limiting instruction that ensures that the jury only considers that case for approved purposes. *United States v. Cummings*, 858 F.3d 763, 776 (2d Cir. 2017) ("Where evidence is admissible for one purpose but is inadmissible for another, the trial judge should, when requested, instruct the jury as to the limited purpose for which the evidence may be considered.") (quoting *United States v. Washington*, 592 F.2d 680, 681 (2d Cir. 1979)).

Here, we would propose a limiting instruction along the lines of the following:

> Ladies and gentlemen, I expect that you are about to hear testimony that Mr. Curcio either offered or gave a refund to a customer who expressed concern about the card he had purchased from Mr. Curcio. I am instructing you that the mere fact of such a refund cannot be considered evidence of Curcio's good faith, and you cannot use it in determining whether Mr. Curcio intended to defraud the customer in the first place. This is the case because, under the law, if you convince someone to buy something with the intent to defraud them, your subsequent willingness to give a refund does not change the fact that you acted with intent to defraud in the first place. You can continue to use other evidence and testimony to determine whether Mr. Curcio acted in good faith when he sold these items.

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams
-4-
January 11, 2026

As always, we thank the Court.

                                                                Respectfully submitted,

                                                                */s/ Martin Bell*
                                                                Martin Bell
                                                                Meredith Karp
                                                                Patrick Barry
                                                                Nicolas Lussier
                                                                Wendy Wu
                                                                Gineen Abuali