# Exhibit A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

December 28, 2025

**BY EMAIL**

Martin S. Bell, Esq.
Meredith Karp, Esq.
Patrick K. Barry, Esq.
Simpson Thacher & Barlett LLP
425 Lexington Avenue
New York, NY 10017

    Re: *United States v. Anthony Curcio*, 24 Cr. 312 (RA)

Dear Counsel:

  In response to your December 22, 2025, letters to the Government pursuant to: (i) 28 C.F.R. §§ 16.21–16.29 and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (the "*Touhy* Letter"); and (ii) *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), or their progeny (the "*Brady/Giglio* Letter"), the Government responds as follows. As always, we are happy to confer further or discuss on a call, if helpful.

*Touhy* Letter

- The Government presently intends to call FBI Special Agent Christopher Campbell to testify on behalf of the Government. Given that he will be made available as a witness at trial, we do not believe the *Touhy* procedures are necessary.

- While we generally see no issue with some of the identified testimony you seek from SA Campbell (*e.g.*, search procedures, evidence collection and preservation, and where items were found), we object to the admissibility of several lines of inquiry on various grounds, including relevance, hearsay, and FRE 403. Objectionable lines of inquiry include SA Campbell's application for the premises search warrant (which the Court has already upheld in denying Curcio's pretrial suppression motion) or much of the testimony referenced on page 2 of your *Touhy* letter regarding SA Campbell's investigative coordination with third parties, such as PSA and MySlabs, and the timing and substance of those communications. Among other things, it is not clear to the Government, given the limited extent of SA Campbell's personal interactions with Curcio during the investigation, how *SA Campbell's* actions (as opposed to a third party's) could have had any direct effect on Curcio's state of mind and any testimony by SA Campbell about a *third party's* communications with Curcio would be hearsay. Nor could SA Campbell offer any admissible testimony about Curcio's state of mind.

*Brady*/*Giglio* Letter

To take your requests in order, and without making any concessions as to whether any of the below constitutes *Brady* or *Giglio* material:

- You have requested the production of any evidence undermining the Government's position that the scheme involved "misrepresent[ing] the authenticity or professional grading, authentication, or encasement of certain of the cards." As to this request, you have received as part of Rule 16 discovery any such documents that are in the possession of the prosecution team, and you will be receiving 3500 and *Giglio* materials by January 2, 2026, pursuant to the parties' agreed-upon pre-trial schedule. Further, and as we have previously disclosed, we note again that when reholdering two cards, PSA did not initially detect that two cards that originated from Curcio were misrepresented to be cards graded by PSA: 1987 Fleer Jordan PSA 10, # 27018112, and 1986 Fleer sticker Jordan PSA 10, #03085869. *See, e.g.*, USAO_000015360-000015460; USAO_000027809-000027830. PSA later identified and corrected its mistake and made victim Brian Oleska whole.

  For the avoidance of doubt, and as indicated in our motion *in limine* seeking to preclude the defense from introducing so-called "good acts" evidence, "[t]he Government has not alleged that *every* card that Curcio ever sold or attempted to sell was fraudulently mislabeled." Along these lines, for example, the Government learned on December 23, 2025 from prospective trial witness Darren Adams that certain cards the Government has never alleged were fraudulent (and were not purported to have ever been graded, holdered, labeled, or even received by PSA), appeared to be authentic to a third-party, the Baseball Card Exchange. These cards were four unopened 2017 National Treasure boxes and an unopened 1980-81 Topps basketball box. According to Adams, the Baseball Card Exchange told Adams that these sealed items (*i.e.*, the boxes) looked good (*i.e.*, appeared authentic). The Government did not and does not intend to contest the authenticity of these boxed cards at trial, but it does intend to contest the authenticity of the cards purportedly graded by PSA that Curcio and Iosif Bondarchuk sold and attempted to sell to Adams. In addition, as another example, various cards recovered during the search of Curcio's residence appear to be cards authentically graded by PSA, while other cards are counterfeit PSA-graded cards. The records relating to this search were already produced to you as part of Rule 16 discovery.

- With respect to your request for records of any inducements/promises/agreements with cooperators and any cooperator *Giglio*, we intend to produce these materials by January 2, 2026, pursuant to the parties' agreed-upon pre-trial schedule.

- With respect to your request for any records showing that Curcio and Bondarchuk failed to "agree" on the conspiracy, you will receive any 3500 and *Giglio* material related to Bondarchuk by January 2, 2026, pursuant to the parties' agreed-upon pre-trial schedule. We note here, however, that the charged fraud itself was achieved through various means

and is not confined to one particular methodology, though it had the same overarching goal. Any attempt to artificially cramp the charged conspiracy to something much narrower is misguided and atextual. Indeed, as charged, the defendants agreed to (a) alter and create cards, card holders, and labels, and (b) use real and fake third parties and identities to deceive victims about whether PSA had ever graded certain trading cards, awarded those cards a particular grade, and catalogued those cards with particular certification numbers.

        Very truly yours,

        JAY CLAYTON
        United States Attorney

by:   /s/ David R. Felton
      David R. Felton
      Kingdar Prussien
      Cecilia Vogel
      Assistant United States Attorneys
      (212) 637-2299/-2223/-1084