

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

January 24, 2026

**BY ECF**

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *United States v. Anthony Curcio*, 24 Cr. 312 (RA)

Dear Judge Abrams:

  The Government submits this letter in support of its request to include an instruction regarding conscious avoidance in the jury charge. For the reasons set forth herein, there is sufficient evidence in the trial record to give a conscious avoidance charge, and the Court should use the language currently in the Court's draft jury charge.

  Applicable Law

  A conscious avoidance charge, also known as "willful blindness," *United States v. Graham*, 51 F.4th 67, 83 (2d Cir. 2022), is proper where a defendant has asserted "the lack of some specific aspect of knowledge required for conviction" and there is "an appropriate factual predicate for the charge, *i.e.*, the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *United States v. Fofanah*, 765 F.3d 141, 144 (2d Cir. 2014). The instruction is particularly appropriate where "a defendant's involvement in the criminal offense [is] so overwhelmingly suspicious that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge." *United States v. Kozeny*, 667 F.3d 122, 134 (2d Cir. 2011). "The conscious-avoidance doctrine applies to a defendant who consciously avoided learning a fact while aware of a high probability of its existence." *Graham*, 51 F.4th at 83-84 (citations and internal quotation marks omitted).

  The Government "need not choose between an 'actual knowledge' and a 'conscious avoidance' theory." *United States v. Ferguson*, 676 F.3d 260, 278 (2d Cir. 2011). That is, a conscious avoidance instruction "is not inappropriate merely because the Government has primarily attempted to prove that the defendant had actual knowledge, while urging in the alternative that if the defendant lacked such knowledge it was only because he had studiously sought to avoid knowing what was plain." *United States v. Hopkins*, 53 F.3d 533, 542 (2d Cir. 1995). To the contrary, in many cases, the evidence supporting actual knowledge will be the same evidence that supports a conscious avoidance theory. As the Second Circuit has observed, "the

same evidence that will raise an inference that the defendant had actual knowledge of the illegal conduct ordinarily will also raise the inference that the defendant was subjectively aware of a high probability of the existence of illegal conduct." *Kozeny*, 667 F.3d at 133–34.

In a conspiracy case, a conscious avoidance charge is appropriate when, as here, the defendant disputes his knowledge of the object of the conspiracy. *See United States v. Svoboda*, 347 F.3d 471, 479 (2d Cir. 2003). "[T]he jury may use the conscious avoidance doctrine to establish the defendant's knowledge of the aims of the conspiracy but . . . may not use it to establish the defendant's intent to participate in the conspiracy." *United States v. Reyes*, 302 F.3d 48, 55 (2d Cir. 2002). Accordingly, "once defendant's participation in a conspiracy has been proved, conscious avoidance may properly be used to prove his knowledge of its unlawful objectives." *Id.* at 54–55; *Graham*, 51 F.4th at 83-84 (upholding conscious avoidance charge in fraud conspiracy case where, as here, defendant ignored red flags of the fraudulent aims of the conspiracy).

Discussion

The defendant contests that he knowingly sold or traded cards in fake or tampered holders with fake PSA grades. (ECF No. 74). The defense's cross examinations at trial were consistent with the defense argument that the defendant did not knowingly sell or trade cards with fake PSA grades on the theory that the graded cards did not originate with the defendant.[1] Aside from the evidence showing the defendant made the PSA labels and put the cards in fake or tampered PSA cases himself, there is ample red flag evidence introduced at trial that indicates that, at a minimum, the defendant was aware of a high probability that he was selling and trading cards in counterfeit PSA cases with altered PSA labels, and that he consciously avoided confirming that fact.

There are numerous examples of the defendant being put on notice that the cards he was trading and selling were in fake PSA cases or in some way inauthentic, and yet he continued to sell and trade cards in counterfeit PSA cases with fake PSA grades. *First*, in May 2022, the defendant tried to sell on MySlabs a Michael Jordan rookie card in a counterfeit PSA case that was purportedly graded a PSA 10. The defendant was warned directly by MySlabs and by PSA that they believed the card was in a counterfeit PSA holder, and PSA offered to physically review the card for free, but the defendant never sent in the card. *Second,* in the fall of 2022, the defendant sought to sell two cards—a purported PSA 9 and PSA 10—on eBay using his "elcardo" account, but both cards were shipped back directly to the defendant and not sold because they failed eBay's authentication program (one of these two cards is the Michael Jordan rookie card with the crease that came up at several points during trial). *Third,* in October 2022, the defendant received at least one complaint from an eBay customer about a card that he had sold, and after an investigation by eBay in November 2022, eBay suspended the defendant's "elcardo" account. *Fourth,* in October 2022, the defendant submitted eight cards to PSA for reholdering—six purported PSA 10s and two purported PSA 9s—seven of which were found to be in counterfeit or tampered PSA holders and

---

[1] Tr. 204 (cross examination of Joseph Baudo); Tr. 369-370 (cross examination of Ryan Dills); Tr. 451 (cross examination of Sean McMillan); Tr. 1099 (cross examination of Matthew Greaney); Tr. 1658, 1699 (cross examination of Jacqueline Curiel).

returned raw to the defendant in February 2023. *Fifth*, in February 2023, PSA notified the defendant that it closed his PSA account.

Despite these warnings, the defendant continued to trade and sell cards throughout this period and beyond, and continued to be put on notice by many of his victims that the cards he was selling or trading were either not authentic or not in authentic PSA cases:

- In September 2022, Curcio gave Corey Trammell two cards in a trade, one a Michael Jordan rookie card purportedly graded a PSA 10. That same month, Curcio also gave Trammell a card in a fake PSA holder as commission for introducing Curcio to Brian Oleska, who bought a card in a fake PSA holder from Curcio.

- On February 19, 2023, Curcio (pretending to be Bondarchuk) sold Brian Rzewnicki a card in a counterfeit PSA case that had purportedly been graded a PSA 7, *i.e.*, the same creased Michael Jordan rookie card that Curcio had tried to sell on eBay under his "elcardo" account as a PSA 9 that had been rejected by eBay's authentication program.

- On February 24, 2023, Curcio and Bondarchuk traded Ryan Dills cards in counterfeit PSA cases.

- On March 20, 2023, Curcio (pretending to be Bondarchuk) sold Sean McMillan a card in a counterfeit PSA case.

- On March 22, 2023, Bondarchuk and Curcio (pretending at different points to be Bondarchuk and Rick Fabel) sold cards purportedly graded by PSA to Ashish Jain, and Jain promptly reversed the transaction and told Curcio (pretending to be Bondarchuk) that the cards were fake and that he was contacting FBI.

- On March 27 and April 21, 2023, Curcio and Bondarchuk sold cards in fake PSA cases to Joe Baudo.

- On May 1, 2023, on a recorded call, Baudo notified Curcio (pretending to be Bondarchuk) that the cards he had received were in counterfeit cases.

- On May 1, 2023, Rzewnicki notified Curcio (pretending to be Bondarchuk) that PSA had temporarily deactivated the certification number for the card he had received because it was associated with a counterfeit. Rzewnicki returned the card and received a refund.

- Starting on May 9, 2023, through July 2023, in multiple messages, Dills notified Curcio (pretending to be Bondarchuk) that PSA had notified him there was a problem with the certification numbers of the cards he had received.

- On May 18 and 20, 2023, Bondarchuk and Curcio (pretending to be John Steele) sold and attempted to sell Darren Adams cards purportedly graded by PSA, and Adams told them that the cards were in counterfeit PSA cases.

- On July 7, 2023, McMillan notified Curcio (pretending to be Bondarchuk) that the card he received was in a fake PSA case.

- On July 25, 2023, Curcio sold a card in fake PSA holder, through Corey Trammell, to Special Agent Campbell acting in an undercover capacity. Shortly before this transaction, Trammell notified Curcio that the Michael Jordan rookie card he had received from Curcio in September 2022 had a problem with the certification number, and Trammell continued to notify Curcio about problems with other cards.

- In September 2023, Curcio traded Dan Bliss a Michael Jordan rookie card in a counterfeit PSA case purportedly labeled "authentic altered" by PSA. This was the same creased card Curcio had previously tried to sell on eBay as a PSA 9 and to Rzewnicki as a PSA 7.

- On September 11, 2023, Curcio sold cards purportedly graded by PSA to Michael Grossbarth, and that same month Grossbarth spoke with Curcio by phone and text message regarding a problem with the cards and requested a refund, which he did receive in exchange for returning the cards to Curcio.

- On September 28, 2023, Curcio sold cards purportedly graded by PSA to Luke Raynolds, and at least one of the two was in a counterfeit PSA case. On November 7, 2023, Curcio engaged Raynolds to consign cards purportedly graded by PSA. On December 1 and 11, 2023, Raynolds notified Curcio that three of the consigned cards failed eBay's authentication check.

- On April 13, 2024, Curcio was stopped by police at a card show in New Jersey while trying to sell cards and was notified that others at the show were claiming Curcio was selling counterfeit cards.

The evidence at trial shows—at a minimum—that the defendant consciously avoided learning the cards he sold and traded had fake PSA grades despite repeatedly being put on notice that the cards were in fake PSA cases or that there were other problems with the authenticity of the cards. The Second Circuit's repeated recognition that the same evidence that is probative of conscious avoidance may also be probative of actual knowledge, *see, e.g., United States v. Cuti*, 720 F.3d 453, 463 (2d Cir. 2013); *Kozeny*, 667 F.3d at 133–34, squarely applies here, where there is a more than sufficient factual predicate for the conscious avoidance charge. Curcio repeatedly ignored the red flags listed above—namely being put on notice by MySlabs, eBay, PSA, and victims. In other words, Curcio "fail[ed] to question" a host of "suspicious circumstances," and in so doing, "purposeful[ly] contriv[ed]" his conduct "to avoid guilty knowledge." *Kozeny*, 667 F.3d at 134.

The fact that Curcio was repeatedly put on notice shows Curcio was aware of a high probability that the cards he was selling and trading were in fake PSA cases with fake PSA grades and consciously avoided confirming that fact by deliberately not conducting any meaningful diligence, such as sending the cards to PSA for a free review. *See, e.g.*, *United States v. Greenberg*, No. 23-7168, 2025 WL 369680, at *4 (2d Cir. Feb. 3, 2025) (conscious avoidance charge appropriate where defendants were "aware of high probability of the disputed fact and deliberately avoided confirming otherwise"); *United States v. Wedd*, 993 F.3d 104, 119 (2d Cir. 2021) ("In sufficiently suspicious circumstances, a mere failure to ask questions—even absent more affirmative steps of avoidance—can demonstrate conscious avoidance."); *see also Kozeny*, 667 F.3d at 134 ("[C]onscious avoidance may be established where[ ] a defendant's involvement in the criminal offense may have been so overwhelmingly suspicious that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge.").

In similar circumstances, the Second Circuit has concluded that a fraud conspiracy defendant's "active disregard of information tending to show a high probability of the fraudulent aims of the conspiracy," suffices to justify a conscious avoidance charge. *Graham*, 51 F.4th at 84. So too here, where Curcio likewise actively disregarded the red flags tending to show a high probability that the cards he was selling were falsely represented to have received certain grades from PSA. And, again, the Second Circuit has explicitly explained that "[r]ed flags about the legitimacy of a transaction can be used to show both actual knowledge *and conscious avoidance*." *Ferguson*, 676 F.3d at 278 (emphasis added); *cf. United States v. Rivera-Rodriguez*, 318 F.3d 268, 272 (1st Cir. 2003) (explaining that a jury could find that a defendant's decision to continue criminal acts in spite of red flags constitutes willful blindness). Accordingly, on this record, there is ample basis for the Court to instruct the jury on conscious avoidance.

The Government has no objection to the proposed conscious avoidance charge currently in the Court's draft jury charge.

                                              Respectfully submitted,

                                              JAY CLAYTON
                                              United States Attorney

by:    /s/
           David R. Felton
           Kingdar Prussien
           Cecilia Vogel
           Assistant United States Attorneys
           (212) 637-2299/-2223/-1084

cc:    All counsel of record (by ECF)