# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

TELEPHONE: +1-212-455-2000
FACSIMILE: +1-212-455-2502

Direct Dial Number                                                                                              E-mail Address

+1-212-455-2542                                                                                        martin.bell@stblaw.com

January 25, 2026

BY ECF & EMAIL

Re:     *United States v. Anthony Curcio*, 24 Cr. 312 (RA)

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Dear Judge Abrams:

We write on behalf of Defendant Anthony Curcio regarding the Government's request for a conscious avoidance instruction. For the reasons discussed on the record on January 23, 2026 and those set forth below, a conscious avoidance instruction could lead to a wrongful conviction for negligent (instead of intentional) conduct and, accordingly, is inappropriate here.

Courts are leery of conscious avoidance instructions because of their "tendency [] to allow juries to convict upon a finding of negligence for crimes that require intent." *United States v. Giovannetti*, 919 F.2d 1223, 1228 (7th Cir. 1990) (Posner, J.) (internal quotation marks and citation omitted); *see United States v. Nektalov*, 461 F.3d 309, 315 (2d Cir. 2006) ("[I]t is essential to the concept of conscious avoidance that the defendant must be shown to have decided not to learn the key fact, not merely to have failed to learn it through negligence . . . .") (cleaned up)).

Because of this risk, the Supreme Court has limited conscious avoidance instructions to cases that satisfy a two-part test. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). First, there must be evidence that the defendant subjectively believed that there was a high probability that a fact exists. Second, the defendant took deliberate actions to avoid learning of that fact. *See id.*; *see also United States v. Ferrarini*, 219 F.3d 145, 154 (2d Cir. 2000). The instruction, in other words, "is designed for cases in which there is evidence that the defendant, knowing or strongly suspecting that he is involved in shady dealings, *takes steps to make sure that he does not acquire full or exact knowledge of the nature and extent of those dealings*." *Giovannetti*, 919 F.2d at 1228 (emphasis added).

BEIJING    BOSTON    BRUSSELS    HONG KONG    HOUSTON    LONDON    LOS ANGELES    LUXEMBOURG    PALO ALTO    SÃO PAULO    TOKYO    WASHINGTON, D.C.

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams

-2-                                                                        January 25, 2026

Mr. Curcio respectfully submits that providing a conscious avoidance instruction is inappropriate.

Here, a conscious avoidance instruction will "confuse[]" the jury by "pointing [it] to circumstances of deliberate avoidance of knowledge that did not exist." *Giovannetti*, 919 F.2d at 1228. At trial, the Government focused on Mr. Curcio's direct interactions with PSA—including instances in which he submitted cards for reholdering. This inconsistency is telling. The Government cannot, on one hand, present evidence that Mr. Curcio actively engaged with PSA in a manner that suggests he understood the process and, on the other hand, rely on a conscious avoidance instruction to imply he was aware of illegality when he failed to investigate. We respectfully submit that the conscious avoidance instruction is inappropriate in this case.

The Government's letter failed to identify any deliberate steps by Mr. Curcio to avoid learning whether any holders were inauthentic. To the contrary, Mr. Curcio did not cutoff his normal curiosity—he followed it. *Giovannetti*, at 1229. The record reflects that Mr. Curcio affirmatively sought verification: he submitted holders to PSA and brought his cards to public card shows, inviting hands-on inspection by others. Tr. 248:20-249:1; 1570:7-11. Delivering purportedly counterfeit products to the authority on holder authenticity (i.e., PSA) is the antithesis of conscious avoidance. These facts distinguish this case from *United States v. Graham*, 51 F.4th 67, 84 (2d Cir. 2022) where the Defendant in that case "told others not to engage with outside lawyers or the title companies." Mr. Curcio *did not* discourage others from doing business with PSA. Given PSA's market position, that would be futile. Indeed, Mr. Curcio himself (begrudgingly) did business with PSA. Tr. 1570:7-11 (Mr. Curcio submitted cards for reholdering directly to PSA in his own name).

The Government has not definitively demonstrated that the fraudulent holders identified were sourced from a common supplier or seller, let alone that such a source was connected to the sales Mr. Curcio actually or planned to make. This is a critical omission because, absent such a link, Mr. Curcio had no reason to doubt the authenticity of cards or holders obtained from a different source or at a different time. That is, cards with holders acquired from a particular eBay seller in, say 2018, do not implicate the authenticity of cards acquired from a completely different seller in 2021. The Government's failure to establish this connection undermines its claim that concerns about one card necessarily extend to the entire inventory of cards and holders in Mr. Curcio's possession. As the Second Circuit has held in *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007), evidence of others' knowledge is relevant only to the extent that it is communicated to the defendant. Thus, notice of illegality tied to one source cannot automatically be used to infer conscious avoidance with respect to items from an entirely separate and unidentified source. That *someone somewhere* knew the products were counterfeit does nothing for the Government without communication of that knowledge to Mr. Curcio. *Id.* This principle is further supported by *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010), which held in a trademark infringement context that generalized awareness of counterfeiting is insufficient to establish notice—contemporaneous and specific knowledge is required. Because the Government has not shown that the cards at issue shared a common source, it cannot reasonably impute knowledge

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams

-3-                                                    January 25, 2026

of one source's illegality to another, particularly where the two are separated by both time and space.

      The Government's citation to the transactions involving Mr. Trammell are excellent examples of why a conscious avoidance instruction is inappropriate. Indeed, PSA reholdered cards Mr. Trammell sold to Mr. Oleska thereby creating an inference that Mr. Curcio's cards were authentic. Tr. 1655:2-17. There is no record evidence cited in the Government's letter that Mr. Curcio disputed or otherwise discouraged Mr. Trammell from submitting those cards to PSA. Months later, Mr. Trammell claimed those cards were receiving renewed scrutiny by PSA (after Mr. Curcio threatened to expose it) and notwithstanding that scrutiny, Mr. Trammell continued to sell cards for Mr. Curcio. Tr. 566:2-17; 567:20-22; 588:16-589:11. In fact, Mr. Trammell thought Mr. Oleska, not Mr. Curcio, was trying to scam him. Tr. 588:16-20. Mr. Trammell's beliefs are a proxy for Mr. Curcio's state of mind; the facts pointed in a direction away from any inherent problem with the cards. After all, PSA had reholdered the cards sold to Mr. Oleska. Again, this is not an example of Mr. Curcio burying his head in the sand; it is an example where Mr. Curcio and a third-party reasonably viewed the cards as being authentic. *United States v. Feroz*, 848 F.2d 359, 360 (2d Cir. 1988) (knowledge of a particular fact to have been established if the defendant "is aware of a high probability of its existence…*unless he actually believes that it does not exist*").

                          *                    \*                    \*

      Conscious avoidance instructions can lead to convictions for negligent conduct in cases where actual intent is required. In the grand scheme of things, they are still novel, even though schemes along the lines of the instant alleged wire fraud scheme are as old as time. The Supreme Court only blessed the use of a conscious avoidance instruction for the first time in 2011, in *Global Tech Appliances*. Because of the high risk of convictions for negligence as opposed to willful avoidance, conscious avoidance instructions are strictly limited to cases involving evidence that the defendant deliberately attempted to avoid knowing of his involvement in wrongdoing when he strongly suspected it. This is not such a case because, as the Court originally observed, there is no evidence of deliberate conscious avoidance in this case.[1] Mr. Curcio therefore respectfully requests that the Court deny the Government's request for a conscious avoidance jury instruction.

Respectfully submitted,

*/s/ Martin S. Bell*

Martin S. Bell
Meredith Karp
Patrick K. Barry

---

[1] *See also* Richard F. Albert & Robert J. Anello, "Conscious Avoidance: An Over-Used Doctrine," New York Law Journal (Apr. 1, 2014)

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams

-4-

January 25, 2026

Nicolas A. Lussier
Wendy Shidi Wu
Gineen K. Abuali